NANCY MARIE MEHOVIC, Plaintiff v. MEHMET MEHOVIC and VEZIC MEHOVIC, Defendants

No. COA97-1025

(Filed 4 May 1999)

**1. Damages— punitive—fraud and undue influence— rescission**

The trial court did not err by submitting to the jury the issue of punitive damages on plaintiff's claims for fraud, undue influence, and duress even though plaintiff had elected rescission on those claims. North Carolina public policy supports an award of punitive damages upon a jury verdict establishing fraud and consequent entitlement, at plaintiff's election, either to rescission or to compensatory damages.

MEHOVIC v. MEHOVIC

[133 N.C. App. 131 (1999)]

2. **Trials— punitive damages—submitted after all the substantive issues—no error**

The trial court did not err in an action for fraud, unjust enrichment, and constructive trust by placing the punitive damages issue at the conclusion of all of the substantive issues. Although defendants contended that it was impossible to determine the issue on which the jury based its award of punitive damages, the evidence was sufficient to sustain the jury's affirmative findings on each of the substantive issues and to support plaintiff's entitlement to punitive damages on each.

Appeal by defendants from order entered 13 May 1997 by Judge J. Marlene Hyatt in McDowell County Superior Court. Heard in the Court of Appeals 21 April 1998.

*C. Gary Triggs, P.A., by C. Gary Triggs and Susan Janney, for defendants-appellants.*

*Hunter & Evans, P.A., by W. Hill Evans, for plaintiff-appellee.*

JOHN, Judge.

Defendants appeal the trial court's order denying their motions to set aside a 19 March 1997 jury verdict, for new trial, and for judgment notwithstanding the verdict (JNOV) or new trial. We conclude the trial court did not err.

Pertinent facts and procedural history include the following: Plaintiff Nancy Marie Mehovic and defendant Mehmet Mehovic (Mehmet) were married 16 December 1981. In 1986, plaintiff and Mehmet (the couple) purchased a home and 15.75 acres of land (the property) in McDowell County for approximately $52,000.00. The couple advanced $26,000.00 at closing and paid the balance due over a period of years thereafter. Improvements were made to the residence during that time and a mobile home was added to the property. Mehmet's younger brother, defendant Vezic Mehovic (Vezic), came to live with the couple as a junior high school student and was thereafter raised by them. On 19 May 1995, the couple executed a gift deed vesting full title to the property in Vezic, and subsequently separated in the summer of 1995.

On 29 August 1995 in McDowell County Superior Court, plaintiff filed the instant complaint setting forth counts of assault and battery, intentional infliction of emotional distress, fraud, duress, and undue

influence against Mehmet. Plaintiff further asserted claims of fraud, unjust enrichment and constructive trust against Vezic. Plaintiff alleged, *inter alia*, that Mehmet had subjected her to physical and mental abuse on several occasions, and that he had fraudulently "represented to [her] that the property needed to be conveyed to [Vezic] in order to protect it from [the couple's] debts," but that it would still belong to the couple following transfer to Vezic.

On 18 September 1995, defendants filed answer, including motions, counterclaims and a third-party complaint against McDowell County resident Jake Stockton. Plaintiff filed her reply, containing motions, 4 October 1995; the third-party defendant filed answer 20 October 1995. Plaintiff's motions to dismiss the third-party complaint and to dismiss defendants' first counterclaim were allowed 17 March 1997, and defendants voluntarily dismissed their remaining counterclaims that same date.

Jury trial commenced 17 March 1997 in McDowell County Superior Court. At the charge conference following presentation of evidence, the parties agreed, *inter alia*, that the trial court would instruct the jury on "Rescission of Written Instrument" in reference to plaintiff's allegations of fraud, undue influence and duress. It was further agreed that,

> if the jury should answer Issue 4, Issue 5, or Issue 6 in favor of the Plaintiff, finding that there was either undue influence, duress, or fraud, then [plaintiff's] remedy [would be] rescission of the written instrument.

Over defendants' objection, the jury was also subsequently instructed, *inter alia*, as follows:

> Issue 7 reads: what amount of punitive damages, if any, does the jury in its discretion award to the Plaintiff . . . ? You will answer this issue only if you have answered Issue 1 or Issue 2 and Issue 3 in favor of the Plaintiff or if you have answered Issue 4 or Issue 5 or Issue 6 in favor of Plaintiff. If you have answered any one of those issues in favor of the Plaintiff, then you will consider Issue Number 7.

The jury answered the issues submitted in the following manner:

Issue One: Did the defendant, Mehmet . . . assault the plaintiff . . . ?

Answer:  YES

Issue Two:  Did the defendant, Mehmet . . . commit a battery upon the plaintiff . . . ?

Answer: __NO__

Issue Three: What amount is the plaintiff . . . entitled to recover for personal injury?

Answer: __$1.00__

Issue Four: Was the plaintiff . . . induced to execute the deed dated May 19, 1995, from Mehmet . . . and [plaintiff] to Vezic . . . , a single man, by the fraudulent representations of the defendant, Mehmet . . . ?

Answer: __YES__

Issue Five: Was the plaintiff . . . induced to execute the deed dated May 19, 1995, from Mehmet . . . and [plaintiff] to Vezic . . . , a single man, by the undue influence of the defendant, Mehmet . . . ?

Answer: __YES__

Issue Six: Was the plaintiff . . . induced to execute the deed dated May 19, 1995, from Mehmet . . . and [plaintiff] to Vezic . . . , a single man, under duress exerted by Mehmet . . . ?

Answer: __YES__

Issue Seven: What amount of punitive damages, if any, does the jury in its discretion award to the plaintiff . . . ?

Answer: __$24,500.00__

Judgment was entered 19 March 1997 ordering rescission of the gift deed to Vezic, and ordering Mehmet to pay plaintiff $1.00 in compensatory damages and $24,500.00 in punitive damages. Defendants filed motions that same date to set aside the verdict, for new trial, and for JNOV or new trial. The trial court denied these motions 13 May 1997, and defendants thereafter filed timely notice of appeal.

[1] Defendants contend the trial court erroneously denied their motions attacking the jury verdict. According to defendants, punitive damages were recoverable by plaintiff only as to the assault count, and not as to those counts upon which plaintiff had foregone an

award of compensatory damages and elected the remedy of rescission, *i.e.*, fraud, undue influence and duress. In light of plaintiff's election of rescission with regard to those claims, defendants continue, the trial court erred in submitting a punitive damages issue thereon. Defendants note they objected to the trial court's listing of the punitive damages issue following all the substantive issues rather than immediately following the assault charge.

It is well-established that a party alleging fraud must elect either the remedy of rescission or that of damages, but may not seek both, as these remedies are inconsistent. *See Parker v. White*, 235 N.C. 680, 688, 71 S.E.2d 122, 128 (1952). One who elects rescission "may recover back what he has parted with under [the contract], but cannot recover damages for the fraud." *Id.* The purpose of the "election of remedies" doctrine "is not to prevent recourse to any remedy, but to prevent double redress for a single wrong." *Smith v. Gulf Oil Corp.*, 239 N.C. 360, 368, 79 S.E.2d 880, 885 (1954).

Pointing to plaintiff's election of the remedy of rescission and forbearance of compensatory damages in reference to her fraud, undue influence and duress claims, defendants assert the principle that punitive damages "cannot be awarded in the absence of compensatory damages." *Lynch v. N.C. Dept. of Justice*, 93 N.C. App. 57, 60, 376 S.E.2d 247, 249 (1989) (citing *Worthy v. Knight*, 210 N.C. 498, 499, 187 S.E. 771, 772 (1936)); *see also Jones v. Gwynne*, 312 N.C. 393, 405, 323 S.E.2d 9, 16 (1984) ("[b]efore punitive damages may be awarded to the plaintiff, the jury must find that the defendant committed an actionable legal wrong . . . and it must award the plaintiff either compensatory or nominal damages") (citations omitted).

Cases supporting this proposition rely upon the seminal case of *Worthy v. Knight*, wherein our Supreme Court stated:

> [p]unitive damages may not be awarded unless otherwise a cause of action exists and at least nominal damages are recoverable by the plaintiff.

*Worthy*, 210 N.C. at 499, 187 S.E. at 772. However, our Supreme Court subsequently interpreted *Worthy* as holding that nominal damages must be *recoverable* in order to justify an award of punitive damages, but that there is no requirement that nominal damages "*actually be recovered.*" *Hawkins v. Hawkins*, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992) (emphasis added). Thus, "[o]nce a cause of action is established, plaintiff is entitled to recover, as a matter of law, nominal dam-

ages, which in turn support an award of punitive damages." *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992).

Therefore,

> the failure of the plaintiff to actually receive an *award* of either nominal or compensatory damages is immaterial [to the entitlement of punitive damages]. The question . . . [is] one of whether [the] plaintiff . . . has established her cause of action[.]

*Id.* However, "[e]ven where sufficient facts are alleged to make out an identifiable tort . . . the *tortious* conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976) (citations omitted). Such aggravated conduct

> may be established by allegations sufficient to allege a tort where that tort, *by its very nature*, encompasses any of the elements of aggravation. Such a tort is fraud, since fraud is, itself, one of the elements of aggravation which will permit punitive damages to be awarded.

*Id.*

North Carolina public policy does not support awarding punitive damages "to *compensate* the plaintiff for nonquantifiable compensatory damages." *Id.* at 113, 229 S.E.2d at 302 (citation omitted) (emphasis added). Rather, punitive damages have been "consistently allowed . . . *solely* on the basis of [our] policy to punish intentional wrongdoing and to deter others from similar behavior." *Id.* (citations omitted) (emphasis added).

We note that

> [i]n North Carolina, actionable fraud *by its very nature* involves intentional wrongdoing . . . [and] [t]he punishment of such intentional wrongdoing is well within North Carolina's policy underlying its concept of punitive damages.

*Id.* (citations omitted).

While our courts have not specifically addressed the propriety of awarding punitive damages based upon the remedy of rescission, the modern trend contemplates

MEHOVIC v. MEHOVIC

[133 N.C. App. 131 (1999)]

no logical reason for permitting punitive damages for the tort of fraud and deceit in a law action, and foreclosing such damages for fraud and deceit in an equitable action.

*Black v. Gardner,* 320 N.W.2d 153, 161 (S.D. 1982); *see also Village of Peck v. Denison,* 450 P.2d 310, 314-15 (Idaho 1969) ("[t]he absence of a showing of actual damages need not bar an award of punitive damages, for such a showing is not a talismanic necessity. The reason for such a requirement is that it first insures that some legally protected interest has been invaded. . . . There is no reason why an award of equitable relief may not fulfill this same function, for in either case it is necessary first to show an invasion of some legally protected interest."); *Kennedy v. Thomsen,* 320 N.W.2d 657, 659 (Iowa Ct. App. 1982) (plaintiff's rescission claim sufficient to support punitive damages where "there was ample evidence [plaintiff] had sustained actual damage," the crucial question for justifying punitive damages award being "whether actual damages were sustained rather than whether such damages are reduced to a money judgment"); *Mid-State Homes, Inc. v. Johnson,* 311 So.2d 312, 318 (Ala. 1975) (exemplary damages are "appropriate in cases . . . where restitution would have little or no deterrent effect, for wrongdoers would run no risk of liability to their victims beyond that of returning what they wrongfully obtained. . . . To allow [punitive damages] when a contract is affirmed, and not when there is a rescission, is illogical when the purposes of punitive damages are [for punishment and prevention]"). We concur with the thrust of current thought and hold North Carolina public policy supports an award of punitive damages upon a jury verdict establishing fraud and consequent entitlement, at the plaintiff's election, either to rescission or compensatory damages.

Turning to the case *sub judice,* we note preliminarily that appellate review of an allegedly erroneous jury instruction involves examination of the contested instruction in context, and

"if the charge when considered as a whole presents the law of the case to the jury in such manner as to leave no reasonable cause to believe that the jury was misled or misinformed [,]"

then the charge " 'will not be held prejudicial.' " *Blow v. Shaughnessy,* 88 N.C. App. 484, 491, 364 S.E.2d 444, 448 (1988) (quoting Strong's N.C. Index 3d, *Appeal and Error,* § 50). Having determined punitive damages may properly be awarded upon a jury verdict sustaining a claim for rescission, we further hold the trial court did

not err in submitting to the jury the issue of punitive damages on plaintiff's claims of fraud, undue influence and duress.

**[2]** Defendants also complain that the trial court's placement of the punitive damages issue at the conclusion of all the substantive issues was misleading and rendered "it impossible to determine upon which [issue] the jury ultimately based" its award of such damages. We do not agree.

> The number, form, and phraseology of issues is in the court's discretion; and there is no abuse of discretion where the issues are "sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause."

*Pinner v. Southern Bell*, 60 N.C. App. 257, 263, 298 S.E.2d 749, 753, *disc. review denied*, 308 N.C. 387, 302 S.E.2d 253 (1983) (quoting *Chalmers v. Womack*, 269 N.C. 433, 435-36, 152 S.E.2d 505, 507 (1967)). Considering the trial court's charge in its entirety and not in detached fragments, *see McPherson v. Haire*, 262 N.C. 71, 75, 136 S.E.2d 224, 226-27 (1964), we conclude there was no abuse of discretion in the court's listing of the issues.

After instructing on Issues One (assault) and Two (battery), the trial court directed the jury to answer Issue Three (personal injury compensation for the assault and/or battery claims) only if it had answered either Issue One or Two, or both, affirmatively. Then, after charging on Issues Four (fraud), Five (undue influence) and Six (duress), the trial court instructed that Issue Seven (punitive damages) was only to be considered and answered if the jury had "answered Issue One or Two and Issue Three in favor of the plaintiff or . . . answered Issue Four or Issue Five or Issue Six in favor of the plaintiff."

Contrary to defendants' assertions, the foregoing format was not inherently or erroneously misleading because evidence offered by the plaintiff and admitted by the court was sufficient to sustain the jury's affirmative findings on each of the substantive issues and to support plaintiff's entitlement to punitive damages on each. *See Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885, 894 (4th Cir. 1992) (claim of error in punitive damages award rejected although jury failed to "specify whether the award was for both . . . counts . . . or only one," where verdicts on both counts upheld on appeal); *see also Walker v. L.B. Price Mercantile Co.*, 203 N.C. 511, 512, 166 S.E. 391, 392 (1932)

(failure of jury to distinguish between compensatory and punitive damages in verdict did not deprive plaintiff from recovering amount awarded).

In short, defendants' arguments in support of its post-trial motions being unfounded, the trial court did not err in denying those motions.

No error.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.