JAMES MICHAEL COLLIER, KIMBERLY COLLIER AND CHERYL DETTE, PLAINTIFFS
v. ANGELA COLLIER BRYANT, DANIEL CHRISTOPHER BRYANT, SOUTHERN
HOMES, LLC AND CATHE HENDERSON, DEFENDANTS

No. COA10-1579

(Filed 1 November 2011)

1. Collateral Estoppel and Res Judicata—removal of executrix—
determination of underlying issue—not estopped

The trial court did not err by denying plaintiffs' motion for
summary judgment on the issue of collateral estoppel where the
action arose from an executrix's transfer of real property to her-
self and removal as executrix. Although plaintiffs argued that
the issue of breach of fiduciary duty was determined when the
executrix was removed, North Carolina recognizes a policy
exception to collateral estoppel for civil actions that follow the
statutory removal of an executor.

2. Wills—authority of executrix—sale of property—voidable

The sale of real property by an executrix was voidable where
she sold the property to her limited liability company and then
transferred it to herself without the knowledge of the other ben-
eficiaries. The executrix had the authority to sell the property
pursuant to the terms of the will because the beneficiaries had
not agreed upon the division of the property, but the act of an
executrix in purchasing property from the estate, either directly
or indirectly, makes the sale voidable.

3. Accord and Satisfaction—retaining proceeds of sale—pro-
tection of proceeds

The trial court erred by accepting a defense of accord and
satisfaction in an action arising from an executrix's transfer of
property to herself. All of the plaintiffs cashed their checks based
on the executrix's misrepresentation of the sale before they dis-
covered the misrepresentation and it was reasonable for them to
retain the funds and protect the proceeds of the sale in light of the
executrix's actions.

4. Fraud—actual—executrix's sale of property—value of
property—issue of fact

The trial court erred by granting summary judgment for
defendants on an actual fraud claim arising from an executrix's
transfer of real property to herself where there was a genuine

issue of material fact as to the value of the property and whether the executrix sold it for less than its value.

**5. Fraud—constructive—executrix transferring property to herself**

The trial court erred by granting summary judgment for defendants on a constructive fraud claim arising from an executrix transferring property to herself. The executrix acted in her fiduciary capacity, used that relationship of trust and confidence to arrange the transfer, and received a possible benefit.

**6. Damages and Remedies—fraudulent transfer of property— punitive damages and rescission of deed**

Plaintiffs were entitled to seek punitive damages in an action for constructive and actual fraud arising from an executrix's transfer of property to herself, even if they also sought rescission of the deed. The purpose of election of remedies is to prevent double redress for a single wrong; if the rescission does not place the injured party in *status quo*, there is no principle of law which prevents him from maintaining his action for damages caused by another's fraud.

**7. Fraud—reasonableness of reliance—issue of fact**

The reasonableness of plaintiff's reliance on defendant-executrix's misrepresentation in the sale of property was a question of fact for the jury.

Appeal by plaintiffs from order entered 29 September 2010 by Judge John O. Craig III in Guilford County Superior Court. Heard in the Court of Appeals 18 August 2011.

*Higgins, Benjamin, Eagles & Adams, PLLC, by Gilbert J. Andia, Jr., for plaintiff-appellants.*

*Forman Rossabi Black, P.A., by Amiel J. Rossabi and Gavin J. Reardon, for defendant-appellees, Angela Collier Bryant, Daniel Christopher Bryant and Southern Homes, LLC.*

*No brief filed for defendant-appellee Cathe Henderson.*

CALABRIA, Judge.

James Michael Collier ("Michael"), Kimberly Collier ("Kimberly"), and Cheryl Dette ("Dette") (collectively "plaintiffs") appeal from an order granting summary judgment in favor of Angela Collier Bryant

("Ms. Bryant"), Daniel Christopher Bryant ("Mr. Bryant"), Southern Homes, LLC ("Southern") (collectively "defendants") and Cathe Henderson ("Henderson") and denying plaintiffs' motion for partial summary judgment. We affirm in part and reverse and remand in part.

## I. Background

James O. Collier ("Mr. Collier") died testate on or about 9 January 2005. His will listed his four children as his beneficiaries. The three plaintiffs are his children and the fourth child, Ms. Bryant, is one of the defendants as well as the Executrix of the Collier Estate.

The will directed the Executrix to sell any owned real estate and divide the proceeds equally among the four children, "unless there is unanimous consent of [the] children to a division of the real estate." Ms. Bryant, as Executrix, had the power to sell the estate property, which included a tract of land, approximately 22.41 acres, located at 1809 Alamance Church Road, Guilford County, North Carolina ("the Farm"). The sale of the Farm is the only estate property that is the subject of the present appeal.

On 3 February 2005, Faye M. Overly, a residential real estate appraiser, performed an appraisal on the Farm ("the Overly appraisal") and estimated the value of the property between $88,000 and $95,000. Since all four children agreed to sell the property and divide the proceeds, early in 2005, Ms. Bryant listed the property with Alicia Hausler ("Hausler"), a real estate agent. Ms. Bryant initially listed the price for the Farm at $1,154,900 even though Greensboro Water Resources estimated the cost to supply water and sewer was $2,664,768. On 2 September 2005, Hausler notified Ms. Bryant that there was some interest but when no offers were submitted after three months, Ms. Bryant reduced the listing price to $800,000.

On 3 January 2006, Articles of Organization were filed in Alabama for Southern, a limited liability company. Mr. and Ms. Bryant were initial members and organizers. Only a month later, on 3 February 2006, the listing agreement for the Farm was terminated.

After the termination of the listing agreement with Hausler, Ms. Bryant contacted plaintiffs. Michael declined to make an offer but Dette offered to purchase the Farm for $100,000. Ms. Bryant was unable to reach Kimberly. According to the settlement statement, dated 17 March 2006, Ms. Bryant, as Executrix of the estate, sold the Farm to Southern for $102,000, yet Ms. Bryant failed to disclose her personal interest in Southern to her siblings. Ms. Bryant signed both the settle-

ment statement and the general warranty deed recorded on 23 March 2006 as the Executrix of the estate. After the sale of the Farm, checks in the amount of $25,347.13 were distributed to each of the plaintiffs.

On 8 August 2006, plaintiffs filed a petition to remove Ms. Bryant as Executrix of the estate. Three days later, unaware of the pending petition and believing the estate was closed, Ms. Bryant sent plaintiffs' final disbursement checks in the amount of $12,063.22. Plaintiffs held these checks rather than cashing them, per their lawyers' instructions. After Ms. Bryant discovered plaintiffs had filed a petition to remove her as Executrix, she requested a stop payment on the checks. Subsequently, Ms. Bryant closed the Collier Estate's bank account with Wachovia Bank and transferred $31,414.87 to another bank account. On 7 September 2006, Dalrypmle Associates, Inc. performed a commercial appraisal ("Dalrypmle appraisal") of the Farm, at plaintiffs' request. According to the Dalrypmle appraisal, the total value of the Farm was $615,000.

On 30 October 2006, Anne P. Ring, Assistant Clerk of Superior Court ("Clerk Ring"), conducted a hearing on the petition to remove Ms. Bryant as Executrix. Clerk Ring concluded Ms. Bryant had violated her fiduciary duty and issued an order on 28 December 2006, revoking the Letters Testamentary that established Ms. Bryant as Executrix. Ms. Bryant appealed Clerk Ring's order. On appeal, Judge Thomas D. Haigwood affirmed Ms. Bryant's removal as Executrix of the Collier Estate. Following Ms. Bryant's removal, Henderson, the public administrator for Guilford County, was appointed the personal representative of the Collier Estate. On 12 September 2006, Southern executed and subsequently recorded a deed transferring ownership of the Farm to Ms. Bryant in her individual capacity.

Plaintiffs filed a complaint on 16 October 2009 requesting a Declaratory Judgment or in the alternative a Claim to Set Aside the Transfer of the Property and alleged Fraud, Fraud in Fiduciary Capacity, Breach of Fiduciary Duty, Civil Conspiracy, and Wrongful Conversion. On 4 February 2010, defendants filed an Answer and Counterclaims alleging Breach of Contract, Conversion, Unjust Enrichment or alternatively Constructive Trust, Abuse of Process, Malicious Filing of *Lis Pendens*, Partition, and Civil Conspiracy. Between 11 March 2010 and 20 July 2010, Ms. Bryant offered to re-sell the Farm to plaintiffs, or the Estate, for essentially the price she had paid in March 2006. Plaintiffs did not accept any of Ms. Bryant's offers. On 7 May 2010, defendants' previously filed Motion to Dismiss was denied.

In July 2010, plaintiffs moved for a partial summary judgment on the claims of breach of fiduciary duty and wrongful conversion. Plaintiffs also moved to set aside the transfer of property. Defendants moved for Summary Judgment alleging plaintiffs had suffered no compensable damages as a result of defendants' acts. On 29 September 2010, the trial court granted summary judgment in favor of defendants and Henderson, denied plaintiffs partial summary judgment, and dismissed all of plaintiffs' claims as well as defendants' counterclaims. Plaintiffs appeal.

## II.  Standard of Review

Summary judgment is proper when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Finova Capital Corp. v. Beach Pharm. II, Ltd.*, 175 N.C. App. 184, 187, 623 S.E.2d 289, 291 (2005). Review of summary judgment on appeal is *de novo*. *Id*. The evidence must be evaluated in the light most favorable to the non-moving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

## III.  Collateral Estoppel

[1] Plaintiffs argue the trial court erred in denying their motion for summary judgment on the issue of collateral estoppel. Specifically, plaintiffs claim that the issue of breach of fiduciary duty cannot be relitigated because it was previously determined at the time Ms. Bryant was removed as Executrix of the Collier Estate. We disagree.

Collateral estoppel bars relitigation of the same issue already decided by administrative or judicial proceedings "provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *Rymer v. Estate of Sorrells*, 127 N.C. App. 266, 268, 488 S.E.2d 838, 840 (1997) (citing *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995)). Offensive collateral estoppel occurs when "a plaintiff seeks to foreclose a defendant from relitigating an issue that the defendant has previously litigated unsuccessfully in another action. . . ." *Id*. at 269, 488 S.E.2d at 840.

North Carolina recognizes a policy exception to collateral estoppel for civil actions that follow the statutory removal of an executor. *Shelton v. Fairley*, 72 N.C. App. 1, 5, 323 S.E.2d 410, 414 (1984). In *Jones v. Palmer*, the Court limited the clerk of court's findings and conclusions to the action that removed the executor. 215 N.C. 696, 699, 2 S.E.2d 850, 853 (1939). The Court stated it did "not intend to make the findings of fact and conclusions of the [c]lerk . . . or the

judge reviewing them on appeal effective for *any other purpose.*" *Id.* (emphasis added).

In *Shelton,* the plaintiff-beneficiaries attempted to remove the executor but were unsuccessful. *Shelton,* 72 N.C. App. at 2, 323 S.E.2d at 412. Later, the plaintiffs filed a civil action for damages and the defendants contended the action was barred by res judicata and collateral estoppel. *Id.* at 2-3, 323 S.E.2d at 413. This Court held that "orders entered in a proceeding . . . in which an executor must show cause why he should not be removed, do not constitute res judicata as to a later civil action for damages between the parties or collaterally estop the bringing of such an action." *Id.* at 5, 323 S.E.2d at 414. In its reasoning, the Court noted that the removal was "purely statutory, with probate jurisdiction vested in the clerk . . . [a] civil suit for damages involves a full trial with the right to have factual issues resolved by a jury." *Id.* at 8, 323 S.E.2d at 416.

In the instant case, the order revoking letters testamentary included findings of fact and conclusions of law. The court concluded that Ms. Bryant violated her fiduciary duty. Plaintiffs sought to collaterally estop Ms. Bryant from relitigating the breach of fiduciary duty issue. Just as the Court held in *Shelton* and *Jones,* the order entered by Clerk Ring, and affirmed by the Judge, does not bind the trial court on the breach of fiduciary duty issue in a later civil action. In addition, it also does not automatically determine the breach of fiduciary duty issue in plaintiffs' subsequent civil action.

Plaintiffs contend that the policy reasons recognized in *Shelton* are inapplicable here. In *Shelton,* the Court indicated applying collateral estoppel or res judicata in this situation "would either chill exercise of the right to seek statutory removal of an executor or force beneficiaries prematurely to bring civil actions for damages." *Shelton,* 72 N.C. App. at 7, 323 S.E.2d at 415. Yet plaintiffs cite no cases, and we can find none, indicating that the result is different when the plaintiff is the party seeking the protection of the prior proceeding that removed the executor. The result proposed by plaintiffs would be in direct conflict with the holding in *Jones.* 215 N.C. at 699, 2 S.E.2d at 853. Therefore, Ms. Bryant is not collaterally estopped from relitigating the issue of breach of fiduciary duty. We affirm the trial court's denial of plaintiffs' motion for partial summary judgment on that issue.

## IV. Ability of Ms. Bryant to Sell Property

[2] Plaintiffs next contend the trial court erred in denying partial summary judgment on the claim to set aside the transfer of the prop-

erty alleging the transfer was void. Specifically, plaintiffs allege that title to the Farm vested in all beneficiaries upon Mr. Collier's death and Ms. Bryant did not have the power to sell the Farm without including plaintiffs as grantors of the fee simple title. We disagree.

When reading a will, the testator's intent guides the trial court's interpretation of the will. *Slater v. Lineberry*, 89 N.C. App. 558, 559, 366 S.E.2d 608, 609-10 (1988). The testator's intent must be given effect unless it is contrary to public policy or some rule of law and the will must be construed according to the "four corners" of the will. *Buchanan v. Buchanan*, ___ N.C. App. ___, 698 S.E.2d 485, 488 (2010) (citations omitted).

In *Slater*, this Court held that a will provision clearly intending to devise land in fee simple would not be limited by further precatory language. *Slater*, 89 N.C. App. at 559, 366 S.E.2d at 609. In that case, the will provision stated:

> ITEM FOUR: I will, devise and bequeath to my three children, to wit: Ola Mae Taylor Lineberry, Gladys Taylor Miller, and Velma Taylor Slater, subject to the life estate of my said wife, all of the lands that I may own at the time of my death, absolutely and in fee simple, and it is my will that my executor sell at public auction for cash the said lands after the death of my said wife, and divide the proceeds among my three children, or in the event that any of them should predecease me, then I want her share to go to her children.

*Id.* The Court noted that "in construing a will every word and clause must, if possible, be given effect and apparent conflicts reconciled." *Id.* at 559, 366 S.E.2d at 610. However, the Court ultimately determined that the first provision, granting the estate in fee simple equally among the daughters, was the testator's general, dominant purpose and the later clause was only precatory language which "must yield to the general, prevailing purpose." *Id.* at 560, 366 S.E.2d at 610; *see also Montgomery v. Hinton*, 45 N.C. App. 271, 275, 262 S.E.2d 697, 700 (1980) (where the Court gave effect to the first provision in the will, holding that the property had vested in the son upon execution of the will and since the fiduciary had no power of sale granted by the will, he was unable to dispose of the property without court approval.).

.    In the instant case, ITEM I of the will states: "I further direct my Executrix to sell any Real Estate I may own and the proceeds divided as indicated in ITEM II below, unless there is unanimous consent of

my children to a division of the real estate." In ITEM II of the will, Mr. Collier devised to the beneficiaries "all of my property of every sort, kind and description, of whatever nature, and wherever situated, both real and personal, to be theirs absolutely and in fee simple, share and share alike." ITEM V of the will named Ms. Bryant as Executrix of the Collier estate and gave her the power of sale, which allowed her to sell the property, publicly or privately, according to terms which she deemed "necessary and desirable in the Settlement of" the estate.

Mr. Collier's will must be read to give effect to all clauses in the will. Just as the Court determined in *Slater* that the first provision was the testator's general dominant purpose, the fact that Mr. Collier placed one provision first is indicative of the priority the provisions should be given. Furthermore, Mr. Collier referenced ITEM II in the provision of ITEM I, indicating if the events in ITEM I occurred, *then* ITEM II should be used to divide the proceeds. It is clear from the four corners of the will that if the beneficiaries could not unanimously agree, then the real property should be sold and the proceeds distributed to the beneficiaries. Plaintiffs' interpretation only gives effect to ITEM II, but there is no indication that the property immediately vested in the beneficiaries as tenants in common, and we must give effect to all provisions in the will. The beneficiaries were only to hold the real property as tenants in common if they unanimously agreed to do so. Since plaintiffs and Ms. Bryant agreed to sell the real property and divide the proceeds, the power of sale provision contained in ITEM V gave the Executrix the power to sell the Farm. By reading the will in this way, all provisions of the will are given effect.

Plaintiffs rely on *Slater* and *Montgomery* because in both cases ownership in fee simple was granted and the Court found this provision of the will to be controlling. However, in both cases the provision granting ownership in fee simple came first in the will. In addition, it was clear in those cases that the testator's intent was first to devise the property to the beneficiaries in fee simple and, at that time, the beneficiaries' rights vested in the property.

In the instant case, the primary provision directed the Executrix to sell any real estate and divide the proceeds, unless an agreement could be reached. Mr. Collier wanted plaintiffs and Ms. Bryant to share in the property equally either by a unanimous agreement or by a distribution of the sales proceeds. There is no indication that Mr. Collier intended their rights to vest in fee simple upon his death. In

fact, he directed exactly what should occur if his children could not unanimously agree regarding a division of the real property.

Plaintiffs contend that North Carolina statutes indicate the title to the Farm vested in all four children immediately upon Mr. Collier's death. *See* N.C. Gen. Stat. § 28A-15-2(b) (2009) ("the title to real property of a decedent devised under a valid probated will becomes vested in the devisees and shall relate back to the decedent's death . . ."). However, as we have previously stated, there was a condition in the will. The title would vest only if the beneficiaries all agreed upon the division of the real property. Since there was no unanimous agreement to divide the property, Ms. Bryant had the authority to sell pursuant to N.C. Gen. Stat. § 28A-17-8 (2009) ("sales of real property made pursuant to authority given by will may be . . . on such terms as in the opinion of the personal representative are most advantageous to those interested in the decedent's estate"). Furthermore, there is nothing in the record that indicates plaintiffs contested Ms. Bryant's ability to sell the Farm. Plaintiffs only contested the sale once they realized the circumstances of the transfer.

In the instant case, Ms. Bryant, as Executrix, was given the authority to sell the real property. We therefore hold, that based on the will, Ms. Bryant had the power to sell the Farm and equally divide the proceeds. Consequently, the sale of the Farm was not void. However, because Ms. Bryant, as Executrix, sold the Farm to her limited liability company then later transferred it to herself individually, the sale is voidable. The act of an executrix purchasing property from the estate, either directly or indirectly, makes a sale voidable. *See Thompson v. Watkins*, 285 N.C. 616, 626, 207 S.E.2d 740, 747 (1974); *Morehead v. Harris*, 262 N.C. 330, 335, 137 S.E.2d 174, 180 (1964). Nevertheless, the executrix does have a remedy. Equitable defenses, including accord and satisfaction, ratification, and unclean hands may be available to her and may bar plaintiffs' tort claims for fraud and breach of fiduciary duty. *See Peedin v. Oliver*, 222 N.C. 665, 670, 24 S.E.2d 519, 522 (1943); *Construction Co. v. Coan*, 30 N.C. App. 731, 736, 228 S.E.2d 497, 501 (1976).

## V. Equitable Defenses

**[3]** The trial court denied summary judgment to plaintiffs on their claim to set aside the transfer of property, finding an accord and satisfaction occurred. Plaintiffs contend the trial court erred in accepting defendants' defense of accord and satisfaction. We agree.

"An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute . . . something other than or different from what he is, or considered himself entitled to." *N.C. State Bar v. Gilbert*, 189 N.C. App. 320, 327, 663 S.E.2d 1, 6 (2008) (citations omitted). "The word 'agreement' implies the parties are of one mind—all have a common understanding of the rights and obligations of the others—there has been a meeting of the minds." *Prentzas v. Prentzas*, 260 N.C. 101, 103-04, 131 S.E.2d 678, 680-81 (1963). A satisfaction is "the execution or performance[,] of such agreement. . . ." *N.C. State Bar*, 189 N.C. App. at 327, 663 S.E.2d at 6. Although generally a question of fact, "where the only reasonable inference is existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record." *Construction Co.*, 30 N.C. App. at 737, 228 S.E.2d at 501.

In *Cullen v. Valley Forge Life Ins. Co.*, this Court recognized that an accord is voidable by the plaintiff "if, when the accord was purportedly made, it was premised upon a misrepresentation not known to plaintiff at that time." 161 N.C. App. 570, 577, 589 S.E.2d 423, 429 (2003). In *Cullen*, this Court held no accord and satisfaction occurred where defendant insurance company intentionally misrepresented that the plaintiff did not have insurance coverage when he did, and the plaintiff cashed the return of premiums in reliance on the misrepresentation. *Id.* at 576-78, 589 S.E.2d at 429-30. The defense of accord and satisfaction was precluded as a matter of law. *Id.* at 577, 589 S.E.2d at 430.

In the instant case, as to plaintiffs Michael and Dette, the facts fail to meet the parameters of an accord and satisfaction. There is nothing in the record to show there was a disputed claim regarding the Farm at the time Michael and Dette received and cashed the checks from the sale of the Farm. While they believed the Farm was worth more, and requested that Ms. Bryant hold the property until a future time when they could receive a higher price, they did not dispute her authority as Executrix to sell the property. Ms. Bryant insisted that the Farm was only worth $88,000-$95,000, the value stated in the Overly appraisal. Ms. Bryant used her power as Executrix to override her siblings' wishes to hold the Farm, and instead sold it from the estate to her own company in March 2006. Michael and Dette were unaware of the circumstances surrounding the transfer as well as Ms. Bryant's involvement in the purchase of the

Farm. Michael and Dette were also unaware that Ms. Bryant had a real estate license. Since Michael and Dette had no reason to distrust Ms. Bryant's motives or actions, nor did they have a claim against Ms. Bryant, the action of cashing their checks was not the satisfaction of a dispute.

Ms. Bryant's relationship with Kimberly was another matter. There is evidence that Ms. Bryant and Kimberly were in an adversarial stance at the time of the sale of the Farm. Specifically, Kimberly had a pending petition to remove Ms. Bryant as Executrix of the estate. On 17 May 2006, a Withdrawal, Dismissal and Settlement Agreement was filed whereby Ms. Bryant agreed to keep Kimberly informed of the sale of estate property and Kimberly agreed to cooperate with the sale of the property. While Michael and Dette were aware of the petition, there is nothing in the record to show that they supported it. In fact, Michael executed an affidavit supporting Ms. Bryant in the action. Therefore, in light of the dispute between Kimberly and Ms. Bryant, Kimberly's acceptance of the check may qualify as an accord and satisfaction.

Nevertheless, all plaintiffs cashed their checks based on Ms. Bryant's misrepresentation of the terms of the sale, and therefore any accord and satisfaction is voidable. Ms. Bryant concealed the details of the sale and the true identity of the buyer from her siblings. Dette had offered to buy the property for $100,000 prior to the date of settlement. Ms. Bryant's explanation was that she simply outbid Dette. However, there is nothing in the record that Dette had an opportunity to make a counteroffer. Plaintiffs cashed the checks from the sale of the Farm prior to discovering Ms. Bryant's misrepresentation. It was not until July 2006 that plaintiffs discovered Mr. and Ms. Bryant were co-owners of Southern Homes.

Defendants base their argument on the unpublished case of *Greene v. Hicks*, which held that the defense of accord and satisfaction was available to an executrix when the beneficiaries of an estate cashed a check for a property they thought was of greater value than the sales price received and the executrix concealed her involvement in the sale. 169 N.C. App. 455, 612 S.E.2d 448, 2005 LEXIS N.C. App. 788, 2005 WL 757191, (2005) (unpublished). While some of the facts of *Greene* may be similar to the instant case, the opinion was unpublished and its holding is not binding on this Court.

Defendants contend that plaintiffs' failure to return the money after discovering Ms. Bryant's alleged fraud is evidence of ratification

or unclean hands. Ratification occurs when a plaintiff takes and retains the benefit of an allegedly unauthorized act. *See Snyder v. Freeman*, 300 N.C. 204, 213, 266 S.E.2d 593, 599-600 (1980). "The doctrine of clean hands is an equitable defense which prevents recovery where the party seeking relief comes into court with unclean hands." *Ray v. Norris*, 78 N.C. App. 379, 384, 337 S.E.2d 137, 141 (1985). Generally, a plaintiff who seeks to set aside and cancel a deed based on fraud must refund the consideration paid. *Smith v. Smith*, 261 N.C. 278, 280, 134 S.E.2d 331, 333 (1964). However, in *Smith*, the Court held that the deed could be set aside and defendant could later bring an action seeking a refund for consideration paid to the plaintiff, unless the plaintiff voluntarily returned the consideration. *Id.* at 281, 134 S.E.2d at 334.

Plaintiffs cashed the checks for the sale of the Farm before they discovered Ms. Bryant's fraud. After discovering the fraud, they filed a petition with the clerk to revoke her letters testamentary. Although Ms. Bryant sent final disbursement checks to plaintiffs in the amount of $12,063.22, plaintiffs held rather than cash the final disbursement checks. On 24 August 2006, when Ms. Bryant discovered a petition was filed to remove her as Executrix, she requested a stop payment on the checks. Ms. Bryant then used the funds that remained in the estate account for legal fees regarding her removal as Executrix. She also used the funds for estate administration fees that she paid to herself and other estate fees. While plaintiffs could have returned the proceeds from the sale of the Farm in August 2006, the fact that they did not only proves plaintiffs wanted to protect the proceeds. In light of Ms. Bryant's actions, it was reasonable for plaintiffs to protect the proceeds from the sale of the Farm and the retention of the funds does not conclusively prove ratification or unclean hands. Defendants may still seek reimbursement of the consideration paid for the sale of the Farm, if the court rescinds the deed.

## VI. Damages

[4] Plaintiffs next argue that the trial court erred in granting summary judgment for defendants on plaintiffs' actual and constructive fraud claims as there were genuine issues of material fact on the issue of damages. We agree.

There are two types of fraud, actual and constructive. *Watts v. Cumberland County Hosp. System*, 317 N.C. 110, 115, 343 S.E.2d 879, 883 (1986). The well-established elements of actual fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reason-

ably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007) (citation omitted). Fraudulent misrepresentation requires, "as an essential element to a cause of action[,] that plaintiff incur actual damage." *Hawkins v. Hawkins*, 101 N.C. App. 529, 532-33, 400 S.E.2d 472, 474-75 (1991). Damage in a fraud case "is the amount of loss caused by the difference between what was received and what was promised through a false representation." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 256, 507 S.E.2d 56, 65 (1998).

In the instant case, plaintiffs contend that due to Ms. Bryant's false representations, the proceeds from the sale of the Farm was an amount less than its actual value, and therefore plaintiffs incurred damages. Ms. Bryant, as Executrix, sold the property to Southern for $102,000. According to the record, the value of the Farm varied depending on the type of appraisal. In February 2005, the Overly appraisal, a residential appraisal, valued the Farm at $88,000-$95,000. In August 2006, the Guilford County Tax Department indicated the value of the Farm had *decreased* to $111,500. In October 2006, the Dalrymple appraisal, a commercial appraisal, valued the property at $615,000. Ms. Bryant sold the Farm for only $102,000, and two independent sources valued the property higher than the price she paid. Therefore, there is a genuine issue of material fact as to the value of the Farm, and the extent of plaintiffs' damages. We hold that summary judgment was improper as to the actual fraud claim on the issue of damages.

Defendants contend that the Dalrymple appraisal was either incompetent hearsay or incompetent evidence of the Farm's value and was therefore never properly before the trial court. Plaintiffs argue that any inadequacies in the appraisal go to the weight, not the admissibility, of the appraisal. The record indicates that the trial court considered the Dalrymple appraisal, which was attached to Ms. Bryant's affidavit, while ruling on summary judgment, but determined it was incompetent evidence of value.

It is unnecessary for us to determine the propriety of the Dalrymple appraisal because even assuming, *arguendo*, the Dalrymple appraisal was hearsay, other evidence in the record shows that Ms. Bryant sold the Farm for less than its value. Specifically, the tax appraisal listed the value of the Farm as $111,500. Viewed in the light most favorable to plaintiffs, there is enough information in the record to create a genuine issue of material fact on the issue of damages for actual fraud.

**[5]** Proof of constructive fraud is less exacting than what is required for actual fraud. *Watts,* 317 N.C. at 115-16, 343 S.E.2d at 884. A plaintiff can establish constructive fraud by showing "(1) facts and circumstances creating a relation of trust and confidence; (2) which surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of the relationship; and (3) the defendant sought to benefit himself in the transaction." *Sullivan v. Mebane Packaging Grp., Inc.,* 158 N.C. App. 19, 32, 581 S.E.2d 452, 462 (2003).

When the parties are engaged in a fiduciary relationship, constructive fraud is presumed when the "superior party obtains a possible benefit." *Id.* (citation omitted). "This presumption arises not so much because [the fiduciary] has committed a fraud, but [because] he may have done so." *Watts,* 317 N.C at 116, 343 S.E.2d at 884 (citing *Atkins v. Withers,* 94 N.C. 581, 590 (1886)). After the plaintiff has established "a *prima facie* case of the existence of a fiduciary duty, and its breach, the burden shifts to the defendant to prove he acted in an 'open, fair and honest' manner, so that no breach of fiduciary duty occurred." *Estate of Smith v. Underwood,* 127 N.C. App. 1, 9, 487 S.E.2d 807, 812 (1997) (citation omitted). For example, the superior party can rebut the presumption by showing "that the confidence reposed in him was not abused, but that the other party acted on independent advice." *Watts,* 317 N.C at 116, 343 S.E.2d at 884 (citation omitted). It is unquestionable that "an executor acts in a fiduciary capacity." *Allen v. Currie, Commiss'r of Revenue,* 254 N.C. 636, 639, 119 S.E.2d 917, 920 (1961).

As Executrix of the Collier estate, Ms. Bryant acted in a fiduciary capacity. Ms. Bryant used that relationship of trust and confidence to arrange the transaction between Southern and the Collier Estate. By selling the Farm to her limited liability company and concealing the buyer's true identity from plaintiffs, Ms. Bryant failed to act in an open, fair and honest manner as Executrix. As the Court established in *Watts,* there is a presumption of constructive fraud if Ms. Bryant received a *possible* benefit from the sale of the Farm. *Watts,* 317 N.C. at 116, 343 S.E.2d at 884.

There is sufficient evidence in the record to show that Ms. Bryant received a possible benefit from the sale. Initially, her actions surrounding the listing and sale of the Farm indicate that she believed the Farm was worth more than the sale price of $102,000. A February 2005 residential appraisal of the Farm indicated the property was

worth $88,000 to $95,000. In March 2005, Ms. Bryant learned that the cost for sewer and water would be $2,664,768. Despite the appraisal and possible expenses, the initial listing price in April 2005 was $1,154,900. In December 2005, Ms. Bryant reduced the price to $800,000. After Mr. and Ms. Bryant created Southern in January 2006, the listing was terminated and Southern bought the Farm for $102,000 in March 2006.

In addition, Ms. Bryant's actions indicate she obtained a possible benefit. Ms. Bryant claimed she intended to sell the Farm and close the estate, yet the record suggests other motives. Michael's affidavit states:

> The period between January 30, 2006 and March 5, 2006, [Ms. Bryant] approached [Dette] and me numerous times via telephone to discuss how we could buy the land through a third party that we trust. She tried to convince [Dette] and me that we could sell the property to a third party that we trust. She could close the probate and divide the proceeds. Then, we could buy back the property, delay filing the deed and HUD-1 statement for up to a year, then sit on the property or divide it amongst the three of us, essentially forcing Kimberly out of the Estate. [Dette] and I were adamantly opposed. We told [Ms. Bryant] that those transactions were not above board or ethical, nor was her idea. She got frustrated because during that time, Kimberly had filed the petition to remove her as Executrix and stopped talking to [Dette] and myself.

It appears that Ms. Bryant, as the superior party, was determined to be the owner of the Farm and abused the confidence plaintiffs placed in her to make sure this happened. Finally, it was unnecessary for Ms. Bryant to sell the Farm in order to pay any of the estate's debts. By transferring the Farm from Southern to herself, she indicated that her true goal was to own the Farm. Therefore, Ms. Bryant's claims of buying the property for the benefit of the estate present an issue of fact.

Constructive fraud is presumed since there is sufficient evidence that Ms. Bryant received a possible benefit from the sale of the Farm. Furthermore, there is nothing in the record showing that plaintiffs sought independent counsel prior to cashing the checks from the sale of the Farm. Plaintiffs did not obtain counsel until July 2006 when they discovered Ms. Bryant's fraudulent actions.[1] Moreover, we have

---

1. While Kimberly had counsel prior to July 2006, individually, there is nothing in the record to show that Kimberly consulted counsel prior to cashing her check from the sale of the Farm.

COLLIER v. BRYANT

[216 N.C. App. 419 (2011)]

already determined that Ms. Bryant's sales tactics were not open and honest and present a genuine issue of material fact as to whether Ms. Bryant paid a fair price. Therefore, the presumption of constructive fraud has not been rebutted. We hold that the trial court improperly granted summary judgment on the issue of constructive fraud.

VII.  Punitive Damages

**[6]** Defendants contend that plaintiffs are not entitled to punitive damages as they cannot prove the elements of actual or constructive fraud and that plaintiffs cannot seek inconsistent remedies of both rescission of the deed and punitive damages. We disagree.

Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action. *Hawkins*, 101 N.C. App. at 532, 400 S.E.2d at 474. In North Carolina, punitive damages have been awarded on the basis of the public policy reason to punish intentional wrongdoing, not on the basis of compensating a plaintiff. *Mehovic v. Mehovic*, 133 N.C. App. 131, 136, 514 S.E.2d 730, 733-34 (1999). Therefore, punitive damages can be awarded if either actual or constructive fraud is shown. *See id.; Melvin v. Home Federal Savings & Loan Assn.*, 125 N.C. App. 660, 665, 482 S.E.2d 6, 8 (1997). To justify an award of punitive damages, nominal damages must be recoverable, but there is no requirement that nominal damages actually be recovered. *Hawkins v. Hawkins*, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992).

When a party has been fraudulently induced to enter a sale, the remedies are either to repudiate the contract or affirm the contract and recover damages caused by the fraud. *Parker v. White*, 235 N.C. 680, 688, 71 S.E.2d 122, 128 (1952). The plaintiff may elect one or the other but may not seek rescission and maintain an action for fraud. *Id.* However, the purpose of the "doctrine of election of remedies is not to prevent recourse to any remedy, but to prevent double redress for a single wrong." *Smith v. Oil Corp.*, 239 N.C. 360, 368, 79 S.E.2d 880, 885 (1954). "The rule is, if rescission of the contract does not place the injured party *in statu quo*, as where he has suffered damages which cancellation of the contract cannot repair, there is no principle of law which prevents him from maintaining his action for damages caused by the other party's fraud." *Kee v. Dillingham*, 229 N.C. 262, 265, 49 S.E.2d 510, 512 (1948).

In *Mehovic*, the husband convinced his wife to transfer full title to their property to his brother to protect their home from creditors. *Mehovic*, 133 N.C. App. at 133, 514 S.E.2d at 732. At trial, the jury ver-

dict allowed a rescission of the fraudulent deed and granted the plaintiff wife $1.00 in nominal damages for assault and $24,500 in punitive damages. *Id.* at 134, 512 S.E.2d at 732. This Court affirmed the trial court and held that "North Carolina public policy supports an award of punitive damages upon a jury verdict establishing fraud and consequent entitlement, at the plaintiff's election, either to rescission or compensatory damages." *Id.* at 137, 514 S.E.2d at 734.

Just as the plaintiffs in *Mehovic* sought rescission of the deed and received an award of punitive damages, plaintiffs in the instant case can seek both rescission of the transfer to Southern and punitive damages for the fraud as a result of Ms. Bryant's fraudulent actions. Based on the facts available in the record, plaintiffs could have maintained an action for either actual or constructive fraud. Therefore, plaintiffs may be able to recover punitive damages for Ms. Bryant's actions, even if they also seek rescission of the deed in the alternative.

## VIII.  Reliance

[7] The trial court granted summary judgment on the issue of fraud solely on the basis that plaintiffs failed to allege actual damages. However, on appeal, defendants also contend that plaintiffs failed to meet the reliance element of actual fraud. We disagree.

Reliance must be reasonable. *Forbis*, 361 N.C. at 527, 649 S.E.2d at 387. "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *Id.* When it appears "a plaintiff seeking relief from alleged [fraud] must have known the truth, the doctrine of reasonable reliance will prevent him from recovering for a misrepresentation which, if in point of fact made, did not deceive him." *Johnson v. Owens*, 263 N.C. 754, 758, 140 S.E.2d 311, 314 (1965). Here, plaintiffs relied on Ms. Bryant's misrepresentation that the buyer of the Farm was disinterested and that $102,000 was the highest price they could receive. The reasonableness of plaintiffs' reliance is a jury question.

## IX.  Conclusion

Based on the specific policy rule allowing relitigation of issues in both a clerk's revocation of letters testamentary and a civil trial, Ms. Bryant is not collaterally estopped from raising the issue of breach of fiduciary duty in a trial on that issue. In addition, since Mr. Collier granted Ms. Bryant the right to sell the property, she had the discretion to sell and the sale of the Farm was not void. However, because Ms. Bryant was a fiduciary and essentially sold the property to her-

self, the sale is voidable. Despite defendants' contentions, although plaintiffs cashed the checks, there was no accord and satisfaction because of Ms. Bryant's misrepresentation. Therefore, plaintiffs may still have the sale nullified. Plaintiffs presented sufficient evidence to create a genuine issue of material fact as to the issue of damages for constructive and actual fraud and may therefore seek punitive damages, even if they also seek rescission of the deed. Finally, plaintiffs relied on Ms. Bryant's misrepresentation; the reasonableness of this reliance is a question for the jury.

Affirmed in part, Reversed and Remanded in part.

Judges ELMORE and STEELMAN concur.