THOMAS M. SHELTON, III, ALAN CRAIG SHELTON AND GEORGE C. COL-
LIE, SUCCESSOR TRUSTEE, OF THE TRUST OF THOMAS M. SHELTON, DECEASED,
PLAINTIFFS v. FRANCIS H. FAIRLEY, INDIVIDUALLY AND AS EXECUTOR OF THE
ESTATE OF THOMAS M. SHELTON, DECEASED; FRANCIS H. FAIRLEY, S. DEAN
HAMRICK, JAMES D. MONTEITH AND LAWRENCE A. COBB, INDIVIDUAL-
LY AND AS FAIRLEY, HAMRICK, MONTEITH & COBB, A NORTH CAROLINA
PARTNERSHIP, DEFENDANTS, AND LOIS HOLT SHELTON WILSON AND
CATHERINE NORELL SHELTON EINHAUS, ADDITIONAL DEFENDANTS

No. 8426SC164

(Filed 18 December 1984)

1. **Rules of Civil Procedure § 4— service on attorneys by delivery to one partner
   at law offices—insufficient as to other partners**

   Service of process against the partners of a law firm as individuals by
   delivering summons to one partner at the law offices of the partnership was
   valid only as to the partner served. The clearly stated provision of G.S. 1A-1,
   Rule 4(j)(1)a is for personal delivery or delivery at each defendant's residence.

2. **Executors and Administrators § 38; Judgments § 35.1— removal of executor—
   not res judicata to action for damages**

   A proceeding to remove an executor and to revoke his letters of ad-
   ministration pursuant to G.S. 28-32 is not *res judicata* as to a later civil action
   for damages between the parties and does not collaterally estop the bringing
   of such an action. A proceeding to remove an executor and a civil suit for
   damages are not the same cause of action.

3. **Limitation of Actions § 4— statute of limitations—action against executor of
   estate—notice of claims**

   In an action for breach of fiduciary duty and damages against the ex-
   ecutor of an estate and his attorneys, the statute of limitations did not begin
   running against plaintiffs' claims at the initial meeting with the executor

1

Shelton v. Fairley

because plaintiffs had only a bare knowledge of anticipated losses; when plaintiffs appealed an order granting defendants attorney's fees or when they filed a petition to remove defendant executor because the knowledge which gives rise to those claims is not necessarily sufficient knowledge from which to allege tortious conduct or other claims; or when plaintiffs failed to attack an order reducing commissions and fees because filing a claim for those losses would have been premature before the final accounting. The court should not have dismissed plaintiffs' claims with prejudice based upon the statute of limitations except for one claim against three defendants who were not properly served initially.

Judge PHILLIPS concurring.

APPEAL by plaintiffs from *Griffin, Judge*. Order and judgment entered 3 October 1983 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 26 October 1984.

Plaintiffs are the successor trustee and the beneficiaries of a testamentary trust established in 1974 and worth, at that time, approximately 4.2 million dollars. Defendants are the executor of the estate, his law firm, and the law firm partners individually.

In 1979 plaintiff-beneficiaries filed a motion pursuant to N.C. Gen. Stat. 28-32 seeking removal of defendant-executor. Defendant-executor thereafter renounced his right to qualify as trustee and, with court approval, subsequently resigned as executor of the estate. In 1980 plaintiffs, again pursuant to N.C. Gen. Stat. 28-32, filed a petition seeking removal of defendant co-trustee. Removal was denied and on plaintiffs' appeal all matters were heard *de novo* in superior court. The court entered an order in August 1981 reducing executor's commissions and attorney's fees from $579,689.99 to $300,000.00. In April 1982 the court signed an order approving a Family Settlement Agreement. Both orders were entered pursuant to N.C. Gen. Stat. Ch. 28, the applicable probate code.[1]

In June 1982 plaintiffs brought the present action for damages, for an accounting and to surcharge the executor for falsifying accounts, breach of fiduciary duty, negligence and legal malpractice. Defendants moved to dismiss as to defendants Fairley, Monteith and Cobb for insufficiency of service of process,

---

1. The decedent died in 1974, prior to the effective date of current Chapter 28A; *former Chapter 28 thus is applicable. See* Editor's Note *to* General Statutes Chapter 28A and Session Laws cited therein.

and for summary judgment on the ground that plaintiffs' action was barred by the statute of limitations. Plaintiffs moved for summary judgment as to the defense of res judicata and collateral estoppel. The court denied plaintiffs' motion, granted defendants' motions, and dismissed with prejudice each of plaintiffs' claims. Plaintiffs appeal.

*George C. Collie and Charles M. Welling for plaintiff appellants.*

*Golding, Crews, Meekins, Gordon & Gray, by John G. Golding and Harvey L. Cosper, Jr., for defendant appellees.*

WHICHARD, Judge.

I.

[1] The first issue concerns service of process on defendants Fairley, Monteith and Cobb. To exercise personal jurisdiction over a natural person, process must be served in compliance with N.C. Gen. Stat. 1A-1, Rule 4(j)(1). "Where a statute provides for service of summons by designated methods, the specified requirements must be complied with or there is no valid service." *Long v. Board of Education*, 52 N.C. App. 625, 626, 279 S.E. 2d 95, 96 (1981), quoting *Broughton v. DuMont*, 43 N.C. App. 512, 514, 259 S.E. 2d 361, 363 (1979), *disc. rev. denied*, 299 N.C. 120, 262 S.E. 2d 5 (1980). Rule 4(j)(1)a provides for service "[b]y delivering a copy of the summons and of the complaint to [defendant] or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein[.]"

A separate summons issued 30 July 1982 to each of the defendants individually was delivered to defendant Hamrick at the law offices of defendant partnership. This did not accord with the clearly stated provision of Rule 4(j)(1)a requiring personal delivery or delivery at each defendant's residence.

Citing *Wiles v. Construction Co.*, 295 N.C. 81, 243 S.E. 2d 756 (1978), plaintiffs contend that actual notice of the suit cures deficiencies in service of process. In *Hall v. Lassiter*, 44 N.C. App. 23, 25, 260 S.E. 2d 155, 157 (1979), *disc. rev. denied*, 299 N.C. 330, 265 S.E. 2d 395 (1980), this Court held otherwise. It stated, "[W]e do

not believe [the Supreme Court in *Wiles*, 295 N.C. 81, 243 S.E. 2d 756,] intended, by judicial decree, completely to abolish the clearly stated statutory requirements for the service of process in favor of some nebulous concept of actual notice." *Id.* It noted that the defect in *Wiles* was in the form of the summons, not in the manner in which it was served. *Id.*

While *Harris v. Maready*, 311 N.C. 536, 319 S.E. 2d 912 (1984) suggests a movement away from strict compliance with N.C. Gen. Stat. 1A-1, Rule 4(b), we do not believe it changes plaintiffs' obligation in this case to comply with N.C. Gen. Stat. 1A-1, Rule 4(j)(1)a. In *Harris* defendant was personally served with a copy of the summons directed to a co-defendant in the action. The caption of the summons listed defendant's name first among the individual defendants being sued. Because defendant was personally served, the court stated that there was no substantial confusion about the identity of defendant as a party being sued. *Id.* at 544, 319 S.E. 2d at 917. In so doing it specifically did not overrule *Philpott v. Kerns*, 285 N.C. 225, 203 S.E. 2d 778 (1974), which "held that actual notice given in a manner other than that prescribed by statute cannot supply constitutional validity." *Harris*, 311 N.C. at 544, 319 S.E. 2d at 917. It found, rather, that facts which showed personal service on the defendant there were sufficient to meet the requirements of Rule 4. *Id.* at 545, 319 S.E. 2d at 920.

In this case defendants Fairley, Monteith and Cobb were not personally served until they received Alias & Pluries summons issued on 7 June 1983. We conclude that jurisdiction over these defendants was not obtained by delivery of the summons issued 30 July 1982 to their law partner, defendant Hamrick, at the offices of defendant partnership. As to these defendants the action was therefore discontinued until the issuance of Alias and Pluries summons on 7 June 1983, and the statute of limitations was not tolled until that date.

We note that given our disposition of the statute of limitations issue, *infra*, tolling the statute on 7 June 1983 instead of on 30 July 1982 affects only one of plaintiffs' nine claims for relief, barring as to defendants Fairley, Monteith and Cobb the fifth claim which alleges damages in excess of $10,000 for the deterio-

ration of improved real property known as "the Queens Road property."

## II.

[2]  The second issue concerns the defense of res judicata and collateral estoppel raised by defendants. Defendants contend that this action for damages is barred by the earlier proceeding to remove the executor and revoke his letters of administration pursuant to N.C. Gen. Stat. 28-32. We hold that orders entered in a proceeding under N.C. Gen. Stat. 28-32, in which an executor must show cause why he should not be removed, do not constitute res judicata as to a later civil action for damages between the parties or collaterally estop the bringing of such an action.

Under the doctrine of res judicata a final judgment on the merits by a court of competent jurisdiction is conclusive of rights and facts or issues thereby litigated as to the parties and those in privity with them. *King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E. 2d 799, 804 (1973); *Kabatnik v. Westminster Co.*, 63 N.C. App. 708, 711-12, 306 S.E. 2d 513, 515 (1983). It bars all subsequent actions between the same parties on the same matter. *Id.* It is not a doctrine without limits, however, and its applicability may often be a close question. Commentators have noted that

> [i]n limiting the doctrine, there is support for the rule that judgments relied upon as creating a bar or preclusion are to be construed with strictness (citations omitted) . . . . Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require . . . (citations omitted).

46 Am. Jur. 2d §§ 401, 402, at 568-69.

Reasoning as above, courts have carved out exceptions to the doctrine of res judicata based upon policy reasons. *See, e.g., Spilker v. Hankin*, 188 F. 2d 35 (D.C. App. 1951) (fiduciary relationship between attorney and client supports policy of courts examining closely any transaction between them, which policy should be weighed against that supporting doctrine of res judicata). Our Supreme Court has recognized an exception in instances where a statutory proceeding to remove an executor may be followed by a later civil action. We are instructed by three

cases in particular: *Jones v. Palmer*, 215 N.C. 696, 2 S.E. 2d 850 (1939); *In re Estate of Galloway*, 229 N.C. 547, 50 S.E. 2d 563 (1948); and *In re Estate of Lowther*, 271 N.C. 345, 156 S.E. 2d 693 (1967).

In *Jones v. Palmer*, 215 N.C. 696, 2 S.E. 2d 850, beneficiaries sought to remove administrators by petition pursuant to N.C. Gen. Stat. 28-32. The Court denied removal on the ground that the estate was practically administered. It stated:

> In sustaining the conclusion reached by the court below deny-
> ing the petition to revoke the letters of administration . . .,
> this Court does not intend to make the findings of fact and
> conclusions of the clerk . . . or the judge reviewing them on
> appeal effective for any other purpose. *They are confined to
> a consideration of that question alone and do not constitute
> res judicata in any other proceeding between the parties
> which the petitioners may be entitled to pursue, and are not
> to be taken to the prejudice of either party therein.*

*Jones v. Palmer*, 215 N.C. at 699, 2 S.E. 2d at 853 (emphasis sup-
plied).

*Jones* thus clearly states that a statutory action to remove administrators or executors is not res judicata in any other pro-
ceeding which the parties are entitled to pursue. Defendants have not cited, and we have not found, any case which overrules *Jones* and its progeny or holds to the contrary.

Defendants argue the inapplicability of *Jones* on the ground that the proceedings here were broader than those there. The *Jones* opinion suggests otherwise. The Court there refers to the "voluminous evidence presented to the court in support of [the] contentions." *Id.* at 697, 2 S.E. 2d at 851. The allegations there, moreover, are substantially similar to those here. Plaintiffs in *Jones* alleged payment of excessive commissions, failure to make timely filings, delay in collection of assets, losses due to un-
necessary interest charges, sales of property at a loss, unauthor-
ized payment of fees and other losses. These claims are similar to plaintiffs' claims here, *infra.* Nothing in the facts in *Jones* sug-
gests that it should be distinguished from this case. It is true, as defendants note, that its procedural posture is different, but that alone does not persuade us that the legal principles it states are not applicable.

*Galloway*, 229 N.C. 547, 50 S.E. 2d 563, also concerns a proceeding under N.C. Gen. Stat. 28-32 for revocation of letters of administration. The significant language there is:

'This proceeding . . . is neither a civil action nor a special proceeding under the code of civil procedure. Its purpose is not to litigate the alleged rights and liabilities of adverse parties, settle the same, and give judgment against one party in favor of another, but is to require one who is charged by the law with special duties and trusts . . . to show cause . . . why he shall not be removed from his office . . . .'

*Galloway*, 229 N.C. at 551, 50 S.E. 2d at 566, quoting *Edwards v. Cobb*, 95 N.C. 5 at 9 (1886).

*Lowther*, 271 N.C. 345, 156 S.E. 2d 693, reaffirms *Galloway* and states, further, that an adjudication of fact by the clerk in a proceeding under N.C. Gen. Stat. 28-32 is not res judicata in any other proceeding between the parties which they may be able to pursue. *Id.* at 356, 156 S.E. 2d at 702.

Thus, under the language of these cases, a proceeding under N.C. Gen. Stat. 28-32 is not res judicata in a civil action for damages. The judgment in the prior proceeding also does not act as an estoppel as to matters litigated and determined therein. The Court makes this point in *Jones* when it states that "the findings of fact and conclusions of the clerk . . . or the judge reviewing them . . . are not to be taken to the prejudice of either party therein." *Jones*, 215 N.C. at 699, 2 S.E. 2d at 853. Prejudice would result if, when beneficiaries sought to remove an executor, they were held to an election of remedies and could not later bring a civil action for damages. Such a policy would either chill exercise of the right to seek statutory removal of an executor or force beneficiaries prematurely to bring civil actions for damages.

Holding that the purpose of N.C. Gen. Stat. 28-32 is "not to litigate the alleged rights and liabilities of adverse parties," *Galloway* at 551, 50 S.E. 2d at 566, is merely a specific application of the broader principle that the doctrine of res judicata does not apply where the second action between the same parties is upon a different claim or demand. *See Hagen v. Hagen*, 205 Va. 791, 794, 139 S.E. 2d 821, 823 (1965); *see also* 46 Am. Jur. 2d § 404 at 572

("[i]f the two actions between the same parties do not involve the same claim, demand, and cause of action, [res judicata] effect will not ordinarily be given to the prior judgment"). Further, finding that a proceeding to remove an executor and a civil suit for damages are not the same cause of action is based upon sound reasoning. The proceeding to remove an executor is purely statutory, with probate jurisdiction vested in the clerk of superior court, N.C. Gen. Stat. 28-1, and reviewable by a superior court judge on appeal. A civil suit for damages involves a full trial with the right to have factual issues resolved by a jury. In this case the relief available to the beneficiaries in the prior proceeding was reduction in executor's commissions and attorney's fees and removal of the executor and the trustee. The present action involves nine claims for relief in the form of money damages for: (1) a loss of $380,000 in the dissolution of decedent's company; (2) a loss in excess of $306,000 in interest penalties and premiums; (3) and (5) losses in excess of $10,000 each from the deterioration and subsequent sale of improved real estate; (4) a loss in excess of $10,000 due to the sale of an oil company and a corporation; (6) reimbursement for $300,000 paid in executor's commissions and attorney's fees; and (7), (8) and (9) respectively, reimbursement for administrative expenses in excess of $10,000, miscellaneous and consequential damages, and punitive damages.

Clearly there is no identity of the matters sued for in the prior proceeding and the present action. Such identity has been declared a prerequisite to the application of the doctrine of res judicata. *Matthews v. Matthews*, 133 So. 2d 91, 94 (Fla. App. 1961). Moreover, "[t]he res judicata doctrine precluding relitigation of the same cause of action has been held inapplicable where the performance of an act was sought in one action and a money judgment in the other." 46 Am. Jur. 2d § 412, at 580.

We are cognizant that relitigation of some issues may result under our holding. That is contemplated by the applicable law, however, which is sound for the policy reasons stated above.

For the foregoing reasons the portion of the Order and Judgment denying plaintiffs' motion for summary judgment as to defendants' Fourth Defense, that the orders in the prior proceeding constitute res judicata and collaterally estop plaintiffs from maintaining this action, is reversed; upon remand, the trial court shall allow the motion.

### III.

**[3]** The third issue concerns the bar of the statute of limitations. In *Tyson v. N.C.N.B.*, 305 N.C. 136, 142, 286 S.E. 2d 561, 565 (1982), our Supreme Court held that a suit to recover damages from an executor for breach of fiduciary duty is essentially grounded in contract and subject to the three-year limitation of N.C. Gen. Stat. 1-52(1). Recently, this Court noted that the cause of action accrues at the date of the alleged breach or, at the latest, on the date it is discovered. *Bruce v. N.C.N.B.*, 62 N.C. App. 724, 727, 303 S.E. 2d 561, 563 (1983).

Plaintiffs contend that the statute of limitations against a defendant in a fiduciary relationship does not begin to run until termination of the relationship. Plaintiffs cite 8 Strong's Index 3d, Limitation of Actions, Sec. 7, p. 383, which in turn cites *Franklin v. Franks*, 205 N.C. 96, 170 S.E. 113 (1933) (fiduciary relationship does not prevent a defendant pleading the statute of limitations as a bar to recovery against him). *Franklin* provides no authority for plaintiffs' theory, however, and we have found none elsewhere.

Defendants contend that as to eight of plaintiffs' nine claims (the ninth being for punitive damages) the breach or the discovery of it occurred more than three years prior to the filing of plaintiffs' suit. The test on their motion for summary judgment is whether on the basis of the materials presented to the court there is any genuine issue as to any material fact. *Snyder v. Freeman*, 40 N.C. App. 348, 353, 253 S.E. 2d 10, 13 (1979). If there is a question of fact as to when the breach or discovery of it occurred, and when the statute of limitations thus began to run, summary judgment on that issue is not appropriate. *Id.*

We deal with each of plaintiffs' claims in turn:

The first claim alleges a loss of approximately $380,000 from the negligent operation and liquidation of the Mellon Company. For federal estate tax purposes, the company was valued at $341,000. Plaintiffs contend they were not aware of the dissipation of cash, cash equivalents, inventory, and tangible assets, until the filing of the sixth annual account, dated 11 December 1980, which showed $2,108.17 cash received on dissolution of the company. Defendants contend that the finding of fact in the order of

August 1981 controls. That finding states: at the initial meeting between plaintiff-beneficiaries and defendant-executor on 7 August 1974 plaintiffs "approved the continuation of the Mellon business in spite of . . . anticipated losses."

On the basis of this finding defendants contend plaintiffs' cause of action arose 7 August 1974. In the alternative defendants contend it arose on 16 November 1979 when the beneficiaries filed their Petition for Removal of defendant-executor.

We agree with plaintiffs. At the time of the "initial meeting" between executor and beneficiaries, the latter had only a bare knowledge of anticipated losses which did not, without more, give rise to an action for negligence and breach of fiduciary duty. At the time they filed the Petition for Removal plaintiffs alleged grounds for removal which were neither identical to grounds for a recovery of civil damages nor sufficient grounds therefor.

We hold that as to the first claim for relief, plaintiffs' cause of action arose on 11 December 1980 with the filing of the sixth annual account. The first claim was thus commenced within the statutory period. As to that claim the court's dismissal with prejudice is reversed.

The second claim alleges a loss in excess of $306,000 for payment of penalties and interest due to defendants' failure to pay estate and inheritance taxes on a timely basis. Defendants contend plaintiffs' cause of action arose on 16 July 1979. At that time defendants, in a petition which included a recital as to the filing of estate and inheritance taxes, sought attorney's fees. Plaintiffs appealed the order granting the fees. In the alternative defendants contend plaintiffs' cause of action arose on 16 November 1979 when plaintiffs filed their Petition for Removal of defendant-executor.

We have determined, *supra*, that an action to remove an executor and a civil suit for negligence and breach of fiduciary duty are not the same cause of action for res judicata purposes. Neither is knowledge which gives rise to a petition to reduce attorney's fees or to remove an executor necessarily sufficient knowledge from which to allege tortious conduct. Plaintiffs' Petition of 16 November 1979, to which defendants refer us, does not allege willful, wanton, or negligent conduct as to the tardy pay-

ment of taxes. It gives no indication plaintiffs knew or suspected that they had a claim for such conduct. Whether that knowledge did not arise until filing of the final account dated 3 March 1981, thus placing plaintiffs' claim within the statutorily permissible period, is a genuine issue of material fact for the jury. As to the second claim the court's dismissal with prejudice is reversed, and the cause is remanded for jury trial on the issue of when plaintiffs' knowledge of the claim arose.

Plaintiffs' third claim alleges losses in excess of $10,000 from the deterioration and subsequent sale of improved real property known as Greystone, a reproduction of a medieval castle owned by decedent. Defendants contend plaintiffs' cause of action arose on 16 November 1979 with the filing of the Petition for Removal. The Petition states that defendant-executor "allowed estate property . . . known as . . . Greystone . . . to become extremely run-down and to decay to such an extent that the fair market value . . . was greatly diminished . . . . [T]he executor failed to fulfill his duty reasonably and properly to make such repairs . . . as would maintain [the property's] value." Plaintiffs contend they had no actual knowledge of the extent of their loss until the filing of the fifth amended annual account on 4 August 1980. We agree with plaintiffs.

We find the following pertinent dates in the record: 11 August 1978, letter from plaintiffs' counsel to defendant-executor indicating the property had not yet been sold; 16 November 1979, Petition for Removal which does not refer to the sale of the property; 4 August 1980, filing of fifth amended annual account which refers to a cash sale of all Greystone property for $300,000. The record is silent as to the date this asset was disposed of.

We find that as to the third claim for relief, plaintiffs' cause of action arose on 4 August 1980 and was thus brought within the statutory period. As to that claim the court's dismissal with prejudice is reversed.

Plaintiffs' fourth claim alleges conspiracy in the transfer of improved and unimproved real estate in Watauga County, North Carolina, including the sale of Pitts Oil Company and Grandfather Corporation, and seeks damages in excess of $10,000. The record discloses that the sale of Pitts Oil Company and Grandfather Corporation took place "on or about July, 1976." The 16 November

1979 Petition for Removal states that the executor has expressed "a division of interest and loyalty between the beneficiaries . . . and certain individuals . . . . [T]he executor has shown great favoritism . . . in the marketing of estate assets and . . . certain properties located in Watauga County . . . ." Neither the sale of property nor the suspicion of favoritism, without more, gives rise to a cause of action for conspiracy. The record is silent as to when plaintiffs learned of the alleged conspiracy. There thus is a genuine issue of material fact concerning the date of the alleged conspiracy or at least the date of plaintiffs' discovery of it. As to plaintiffs' fourth claim for relief the court's dismissal with prejudice is reversed and the cause is remanded for jury trial on the issue of when plaintiffs' claim arose.

Plaintiffs' fifth claim alleges damages in excess of $10,000 for losses sustained by the deterioration of improved real property known as "the Queens Road property." Plaintiffs alleged deterioration, ruin, depreciation, and vandalism of this property. In their Petition for Removal, filed 16 November 1979, plaintiffs alleged that defendant-executor "failed and refused to preserve and protect estate assets . . . allow[ing this property] to sit vacant and idle for such period of time and under such conditions that vandals and marauding persons pilfered said property . . . ." Since the Petition and the complaint present identical allegations based upon knowledge of identical facts, we find that this claim accrued on 16 November 1979, the latest date on which defendants' breach could have been discovered. Plaintiffs' fifth claim is thus time-barred as to defendants Fairley, Monteith and Cobb, and the court's dismissal with prejudice as to that claim as it relates to those defendants is affirmed; except as the dismissal of that claim relates to those defendants, it is reversed.

Plaintiffs' sixth claim is to surcharge the executor for commissions and counsel fees. Defendants contend that plaintiffs' right to attack the award of commissions and attorney's fees expired when they failed to attack the order of August 1981 reducing commissions and fees from $579,689.99 to $300,000.00. Plaintiffs did not have to appeal from that order, however, to preserve their rights against defendants for breach of fiduciary duty. *See Galloway,* 229 N.C. 547, 50 S.E. 2d 563 (rights and liabilities of adverse parties in the estate may not be litigated in a proceeding under N.C. Gen. Stat. 28-32). In addition, the purpose

of surcharge is to reimburse the estate for losses incurred as the result of some act or omission of the representative constituting a breach of trust. 31 Am. Jur. 2d, Executors and Administrators § 522, at 233. Plaintiffs were not aware of the extent of all losses to the estate until the filing of the final account as supplemented on 12 October 1981. It would have been premature to attempt to surcharge for losses either not due to mishandling or that could have been returned to the estate by the time of final accounting. As to this claim plaintiffs' cause of action is based on the breach of fiduciary duty of the executor while administering the estate of the deceased; the claim accrued with the filing of the supplemental final account on 12 October 1981. The sixth claim thus is not time-barred and the court's dismissal with prejudice as to that claim is reversed.

The seventh claim is for administrative expenses due to defendants' delay in closing the estate. Defendants contend plaintiffs had notice of payments for administrative expenses as early as·the second annual account, filed 16 September 1976. Plaintiffs contend that not until the final supplemental account filed on 12 October 1981 could they have had knowledge of the extent of expenses incurred due to defendants' delay in closing the estate. Plaintiffs also contend that until that time defendants could have returned sums to the estate, leaving plaintiffs no cause of action for negligently disbursed sums.

We agree with plaintiffs. Their seventh claim accrued on 12 October 1981. The court's dismissal with prejudice as to that claim is thus reversed.

The eighth claim, which defendants do not address, is for consequential and miscellaneous damages due to prolonged administration of the estate. For the reasons enumerated in discussion of the seventh claim we find that this claim also accrued on 12 October 1981 with the filing of the final supplemental account and the termination of the fiduciary relationship between plaintiffs and defendants. The eighth claim is not time-barred and the court's dismissal with prejudice as to that claim is reversed.

Plaintiffs' ninth claim is for punitive damages for willful breach of fiduciary duties as executor, trustees, and attorneys. Since we have held that all of plaintiffs' claims survive except, in part, the fifth, this claim also survives insofar as it relates to all

claims except, in part, the fifth. The court's dismissal with prejudice as to this claim is affirmed insofar as it relates to the fifth claim as applied to defendants Fairley, Monteith and Cobb, but otherwise is reversed.

IV.

In summary, we conclude as follows:

1. Defendant Hamrick was properly served for all purposes on 30 July 1982.

2. Defendants Fairley, Monteith and Cobb were served individually upon receipt of the Alias and Pluries summons issued on 7 June 1983.

3. Defendant partnership was served on 30 July 1982.

4. The court erred in determining that plaintiffs' claims were barred by the principles of res judicata and collateral estoppel.

5. As to all claims except the fifth as applied to defendants Fairley, Monteith and Cobb, and the ninth insofar as it relates to the fifth and as applied to those defendants, the court erred in granting defendants' motion for summary judgment and dismissing with prejudice based upon the statute of limitations.

Affirmed in part, reversed in part, and remanded.

Judge BECTON concurs.

Judge PHILLIPS concurs (except as stated).

Judge PHILLIPS concurring.

I agree with all that is stated in the well-reasoned opinion of the majority except that defendants Fairley, Monteith and Cobb were not served with process until they received copies of the alias and pluries summons issued on June 7, 1983. In my opinion, these defendants were duly served in July, 1982, when the summons for each of them was delivered to and accepted by their partner in the very offices where all of them practiced law together. The only purpose of the rules concerning the modes of serving process is to guarantee that defendants are notified in

Bridges v. Shelby Women's Clinic, P.A.

some appropriate way of lawsuits filed against them. Since a defendant is duly served when a summons is left with some "discreet" adolescent at his house, it is inconceivable to me that he is not also served when the summons is delivered to his law partner at their place of business. When the purposes of the statute have been accomplished, as certainly was the case with these three defendants, reality, rather than technical wording, should control.