ZACHARY, Judge.
 

 Pursuant to the North Carolina Workers' Compensation Act, an employer and its workers' compensation carrier are entitled to a lien on an injured employee's recovery in an action against a third-party tortfeasor. This lien extends to all benefits paid to an employee for injuries caused by the third party.
 

 In this case, plaintiff Robert Murray was injured in an automobile accident in the course of his employment with unnamed defendant Evans MacTavish Agricraft, Inc. (Evans). Defendant Joseph Moody caused the accident. Evans and its workers' compensation carrier, unnamed defendant Cincinnati Insurance Company (collectively with Evans, unnamed defendants) paid medical and indemnity benefits to Murray, who later brought a personal injury action against Moody. The action was tried to a jury, which heard evidence concerning Murray's injuries and the amount of workers' compensation benefits that he received. The jury returned a verdict against Moody and awarded Murray money damages.
 

 The trial judge entered a final judgment in favor of Murray that, pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (e), reduced the damage award by the amount of workers' compensation benefits he received from unnamed defendants. Four days later, the trial judge entered an amended judgment that did not reduce the damage award but instead specifically granted judgment in favor of Evans for the exact amount of workers' compensation benefits that were paid to Murray, and that granted judgment in favor of Murray for the balance of the damage award.
 

 Roughly a year later, Moody filed a motion in Wilson County Superior Court pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (j), which allows a superior court judge, in his or her discretion, to determine the amount of an employer's lien after an injured employee has obtained a judgment against or settled a claim with a third party. The superior court entered an order denying Moody's motion, holding that the amount of unnamed defendants' lien had been determined by the prior court's amended judgment, and that the same was res judicata and could not be relitigated. As a result, the superior court concluded that it lacked jurisdiction to determine unnamed defendants' lien pursuant to subsection 97-10.2(j).
 

 Moody now appeals the superior court's order, and he argues that the court had jurisdiction to set the amount of the lien. For the reasons that follow, we agree. Accordingly, we reverse the superior court's order denying Moody's motion and remand for further proceedings.
 

 I. Background
 

 On 3 August 2010, Murray was driving on Highway 86 near Hillsborough, North Carolina, when his truck, a company vehicle owned by Evans, was struck in the rear by a car being driven by Moody. The rear impact caused Murray's truck to strike another vehicle, and Murray sustained a compensable
 
 *368
 
 neck injury in the accident. Murray's neck injury required extensive medical treatment, including physical and medication therapy.
 

 Unnamed defendants accepted Murray's workers' compensation claim and paid a total of $7,432.13 in benefits (comprised of $5,247.23 in medical benefits and $2,184.90 in indemnity payments). On 2 August 2013, Murray filed a personal injury action against Moody in Wilson County Superior Court. The complaint alleged that Moody negligently caused the August 2010 car accident and sought damages for Murray's pain and suffering, medical expenses, and permanent injury. The case proceeded to trial in March 2015, the Honorable Robert H. Hobgood presiding.
 

 At trial, the jury heard evidence of the medical and indemnity payments that Evans made to Murray due to the compensable injury he sustained in the August 2010 automobile accident. This evidence established that Murray had received a total of $7,432.13 in workers' compensation benefits. The jury returned a verdict finding Moody to be negligent and awarding Murray damages in the amount of $11,000.00. Consequently, on 16 March 2015, Judge Hobgood entered a final judgment consistent with the jury's verdict. Judge Hobgood then reduced Murray's recovery by the amount of workers' compensation benefits paid to Murray. The final judgment reads as follows:
 

 And the Court having reduced said verdict by $7,423.13, pursuant to the North Carolina Workers['] Compensation Act and in accordance with N.C.G.S. § 97-10.2 ;
 

 IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment be had against the Defendant in the amount of $3,576.87, together with interest from the date of filing hereof and costs taxed to the Defendant herein, including reasonable attorney fees to Plaintiff's counsel pursuant to N.C.G.S. § 6-21.1.
 

 The final judgment complied with
 
 N.C. Gen. Stat. § 97-10.2
 
 (e) (2015), which provides that
 

 the amount of compensation and other benefits paid or payable on account of such injury or death shall be admissible in evidence in any proceeding against the third party. In the event that said amount of compensation and other benefits is introduced in such a proceeding the court shall instruct the jury that said amount will be deducted by the court from any amount of damages awarded to the plaintiff.
 

 For reasons not apparent in the record, Judge Hobgood entered an amended final judgment (amended judgment) on 20 March 2015, which expressly provided that "judgment be had against the Defendant in the amount of $7,423.13 in favor of Evans Mactavish Agricraft to be distributed in accordance with N.C.G.S. § 97-10.2(f)." Another portion of the amended judgment granted "judgment ... in favor of [Murray] in the amount of $3,576.87[,]" the remainder of the jury's damages award. As a result, while the sum of $7,423.13 was simply deducted from Murray's recovery in the initial judgment, the sum of $7,423.13 was specifically awarded to Evans in the amended judgment. Murray's damage award was unchanged by the amended judgment.
 

 On 14 May 2015, Moody appealed to this Court from the amended judgment and other pre- and post-trial orders entered in the negligence action. Roughly three months later, Murray and Moody entered into a settlement that was memorialized in a document entitled "Release of All Claims-Civil Action Pending" (the release). Pursuant to the release, Moody and his liability insurance carrier agreed to pay Murray the lump sum of $15,654.25 in consideration for Murray's agreement to release any "claims resulting or to result" from the August 2010 automobile accident. However, the release expressly preserved unnamed defendants' rights "to enforce the [amended] judgment obtained in favor of [Evans] in [the negligence] action for [workers' compensation] benefits paid ... to ... Robert Murray for his personal injuries."
 

 On 2 September 2015, unnamed defendants served a Notice of Appearance and Claim of Lien as well as a motion pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) seeking determination of the amount of their lien on Murray's recovery. Unnamed defendants' motion, however, was never scheduled for hearing. The record suggests that unnamed defendants did not go forward with their motion
 
 *369
 
 once they learned that the amended judgment setting the specific amount they could recover had been entered in the negligence action. On 10 September 2015, Moody filed a motion to withdraw his appeal from,
 
 inter alia
 
 , the amended judgment. This Court granted the motion to withdraw the appeal four days later.
 

 In February 2016, Moody filed his own Motion for Determination of Workers' Compensation Lien in superior court pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (j). On 22 February 2016, the Honorable Reuben F. Young heard Moody's motion in Wilson County Superior Court. At the hearing, unnamed defendants argued that Judge Hobgood's amended judgment had decided the issue and amount of their lien. As such, unnamed defendants argued, the determination of the lien was res judicata and Judge Young had no statutory authority under
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) to revisit the issue. On 31 March 2016, Judge Young entered an order that denied Moody's motion on the following the grounds:
 

 [T]his Court lacks jurisdiction to determine the Workers' Compensation [Defendants'] subrogation lien under N.C.G.S. § 97-10.2(j) and the same is res judicata. This Court further finds that the Amended Final Judgment entered on March 20, 2015 in the above-captioned case remains undisturbed, specifically including, but not limited to, payment of $7,423.13 by Defendant Joseph Clifton Moody to the Workers' Compensation Defendants to be distributed in accordance with N.C.G.S. § 97-10.2(f).
 

 Moody appeals from Judge Young's order.
 

 II. Discussion
 

 A.
 
 Standard of Review
 

 Ordinarily, the trial court's ruling on a motion pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) is reviewed for an abuse of discretion.
 
 Cook v. Lowe's Home Centers, Inc.
 
 ,
 
 209 N.C.App. 364
 
 , 367,
 
 704 S.E.2d 567
 
 , 570 (2011). However, the principal question presented here is whether Judge Young had jurisdiction to rule on the merits of Moody's motion. "[W]hether a trial court has subject matter jurisdiction is a question of law, which is reviewable on appeal
 
 de novo
 
 ."
 
 Ales v. T.A. Loving Co.
 
 ,
 
 163 N.C.App. 350
 
 , 352,
 
 593 S.E.2d 453
 
 , 455 (2004) (citation omitted).
 

 B.
 
 Analysis
 

 Moody's sole argument on appeal is that Judge Young erred in denying Moody's motion to determine the amount of unnamed defendants' lien on the ground that the amended judgment was res judicata as to the lien issue. We agree.
 

 "Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies[,]" and the doctrine precludes the relitigation of "all matters that were or should have been adjudicated in the prior action."
 
 Whitacre P'ship v. Biosignia, Inc.
 
 ,
 
 358 N.C. 1
 
 , 15,
 
 591 S.E.2d 870
 
 , 880 (2004) (citations omitted). For unnamed defendants to establish that Moody's claim (or motion) is barred by res judicata, they "must show (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits."
 
 Erler v. Aon Risks Servs., Inc.
 
 ,
 
 141 N.C.App. 312
 
 , 316,
 
 540 S.E.2d 65
 
 , 68 (2000),
 
 disc. review denied
 
 , --- N.C. ----,
 
 548 S.E.2d 738
 
 (2001).
 

 It is well established that our Workers' Compensation Act was never intended to provide an employee with a windfall recovery from both the employer and a third party who is legally responsible for causing the employee's compensable injuries.
 
 Radzisz v. Harley Davidson of Metrolina, Inc.
 
 ,
 
 346 N.C. 84
 
 , 89,
 
 484 S.E.2d 566
 
 , 569 (1997). Where "[t]here is one injury, [there is] still only one recovery."
 
 Andrews v. Peters
 
 ,
 
 55 N.C.App. 124
 
 , 131,
 
 284 S.E.2d 748
 
 , 752 (1981),
 
 disc. rev. denied
 
 ,
 
 305 N.C. 395
 
 ,
 
 290 S.E.2d 364
 
 (1982). To that end,
 
 N.C. Gen. Stat. § 97-10.2
 
 defines the rights and remedies of employees and employers against third-party tortfeasors.
 
 Radzisz
 
 ,
 
 346 N.C. at 89
 
 ,
 
 484 S.E.2d at 569
 
 . " Section 97-10.2 and its statutory predecessors were designed to secure prompt, reasonable compensation for an employee and simultaneously to permit an employer who has settled with the employee
 
 *370
 
 to recover such amount from a third-party tort-feasor."
 

 Id.
 

 (citation omitted).
 

 In the first twelve months following an injury, an injured employee has the "exclusive right" to enforce the liability of a third party.
 
 N.C. Gen. Stat. § 97-10.2
 
 (b) (2015). Pursuant to subsection 97-10.2(h) (2015), "[i]n any proceeding against or settlement with the third party, every party to the claim for compensation shall have a lien to the extent of his interest ... upon any payment made by the third party by reason of such injury or death[.]" "An employer's statutory right to a lien on a recovery from the third-party tort-feasor is mandatory in nature [.]"
 
 Radzisz
 
 ,
 
 346 N.C. at 89
 
 ,
 
 484 S.E.2d at 569
 
 .
 

 When an injured employee is entitled to compensation from a third-party judgment or settlement,
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) (2015) grants the superior court limited jurisdiction to determine the amount of an employer's or workers' compensation carrier's subrogation lien:
 

 (j) Notwithstanding any other subsection in this section, in the event that a judgment is obtained by the employee in an action against a third party, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge of the county in which the cause of action arose or where the injured employee resides, or to a presiding judge of either district, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, the judge shall determine, in his discretion, the amount, if any, of the employer's lien, whether based on accrued or prospective workers' compensation benefits, and the amount of cost of the third-party litigation to be shared between the employee and employer. The judge shall consider the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future, the net recovery to plaintiff, the likelihood of the plaintiff prevailing at trial or on appeal, the need for finality in the litigation, and any other factors the court deems just and reasonable, in determining the appropriate amount of the employer's lien. If the matter is pending in the federal district court such determination may be made by a federal district court judge of that division.
 

 Pursuant to the statute's plain language, there are two instances in which the superior court is given jurisdiction: (1) when the employee has obtained a judgment against the third party, and (2) when the employee has settled with the third party.
 

 "There is no mathematical formula or set list of factors for the trial court to consider in making its determination ...; the statute plainly affords the trial court discretion to determine the appropriate amount of [a] lien."
 
 Wood v. Weldon
 
 ,
 
 160 N.C.App. 697
 
 , 700,
 
 586 S.E.2d 801
 
 , 803 (2003) (internal citation omitted),
 
 disc. rev. denied
 
 ,
 
 358 N.C. 550
 
 ,
 
 600 S.E.2d 469
 
 (2004). The discretionary authority granted to the superior court under subsection 97-10.2(j) is rather broad, but it "is not unlimited[.]"
 
 In Re Biddix
 
 ,
 
 138 N.C.App. 500
 
 , 504,
 
 530 S.E.2d 70
 
 , 72 (2000). Rather, " 'the trial court is to make a reasoned choice, a judicial value judgment, which is factually supported ... [by] findings of fact and conclusions of law sufficient to provide for meaningful appellate review.' "
 

 Id.
 

 (quoting
 
 Allen v. Rupard
 
 ,
 
 100 N.C.App. 490
 
 , 495,
 
 397 S.E.2d 330
 
 , 333 (1990) ). It is also "clear from the use of the words 'shall' and 'and' in subsection (j), that the trial court must, at a minimum, consider the factors that are expressly listed in the statute."
 
 Estate of Bullock v. C.C. Mangum Co.
 
 ,
 
 188 N.C.App. 518
 
 , 526,
 
 655 S.E.2d 869
 
 , 874 (2008).
 

 The gravamen of Moody's argument is that the doctrine of res judicata is inapplicable here, as subsection 97-10.2(j) allows him "to challenge the amount the workers' compensation carrier is entitled to recover after a jury trial and entry of judgment" in the negligence action. "If this were not the case," Moody argues, "the ability of a party to challenge the amount of a workers' compensation lien" pursuant to subsection 97-10.2(j) would be limited "only to those situations where a pre-trial settlement was reached."
 

 *371
 
 In response, unnamed defendants argue that because the "amount" of their lien was previously determined ... by way of Judge Hobgood's Amended Final Judgment," res judicata bars the relitigation of this matter. Unnamed defendants further argue that even if the doctrine of res judicata does not apply, "both law and equity" require remand for entry of an order consistent with the amended judgment. Unnamed defendants assert that Judge Hobgood's amended judgment secures the amount they are owed and that amount should not be disturbed. This contention is based on the rule that "ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action."
 
 Calloway v. Ford Motor Co.
 
 ,
 
 281 N.C. 496
 
 , 501,
 
 189 S.E.2d 484
 
 , 488 (1972).
 

 After carefully reviewing the decisions of this Court and our Supreme Court in
 
 Hieb v. Lowery
 
 ,
 
 121 N.C.App. 33
 
 ,
 
 464 S.E.2d 308
 
 (1995),
 
 aff'd
 
 ,
 
 344 N.C. 403
 
 ,
 
 474 S.E.2d 323
 
 (1996), we conclude that Moody's argument must prevail.
 

 In
 
 Hieb
 
 , the plaintiff, who was gravely injured in an automobile accident and who received workers' compensation benefits from St. Paul Fire and Marine Insurance Company (St. Paul), filed an action against the third-party defendant together with unnamed defendant Hartford Accident and Indemnity Company (Hartford), the plaintiff's underinsured motorist (UIM) insurance carrier.
 
 Hieb
 
 ,
 
 121 N.C.App. at 34
 
 ,
 
 464 S.E.2d at 309
 
 . The personal injury action was tried to a jury, which returned a verdict against the defendants and awarded the plaintiff $1,279,000.00 in damages.
 
 Id.
 
 at 34,
 
 464 S.E.2d at 309
 
 . Judge Robert Gaines entered judgment upon the jury verdict, and the judgment contained findings that referenced a declaratory judgment action that the plaintiff had filed before trial:
 

 7. The Plaintiffs have instituted a second action against St. Paul Fire and Marine and Hartford Insurance Company ... to determine the respective rights of the parties to the benefits of the Hartford underinsured motorist coverage and to determine the amount of such coverage.
 

 8. That on or about August 28, 1992, an order was entered in that action by the Honorable Robert P. Johnston which holds that ... Hartford is allowed to reduce its limits by the amount of worker[s'] compensation paid or to be paid to Plaintiff and further holding that the proceeds of the Hartford underinsured policy are subject to the lien of St. Paul Insurance Company pursuant to North Carolina General Statute[s] [s]ection 97-10.2. That action is now on appeal to the North Carolina Court of Appeals. This Court is bound by the Order of Judge Johnston unless and until said Order is modified by the Court of Appeals or any other Court of competent jurisdiction. This Court has not addressed the issues raised in that action.
 

 Id.
 
 at 35,
 
 464 S.E.2d at 309-10
 
 (first alteration added).
 

 Based on these findings, Judge Gaines determined that St. Paul was entitled to a lien on all workers' compensation benefits it had paid, and would pay, to the plaintiff.
 
 Id.
 
 at 35,
 
 464 S.E.2d at 310
 
 . As noted in Judge Gaines' judgment, Judge Johnston's order allowed Hartford to reduce its limits by the amount of workers' compensation paid or to be paid to the plaintiff, and held that the Hartford UIM policy's proceeds were subject to the lien of St. Paul for all amounts paid or to be paid to the plaintiff.
 

 Id.
 

 This Court reversed the former portion of that order but affirmed the latter portion of the order allowing St. Paul's lien against the Hartford UIM benefits.
 
 Hieb v. St. Paul Fire & Marine Ins. Co.
 
 ,
 
 112 N.C.App. 502
 
 ,
 
 435 S.E.2d 826
 
 (1993) (
 
 Hieb I
 
 ). Shortly after the decision in
 
 Hieb I
 
 , Hartford tendered its UIM policy limit of $475,000.00 in accordance with the orders of Judges Johnston and Gaines.
 
 Hieb
 
 ,
 
 121 N.C.App. at 36
 
 ,
 
 464 S.E.2d at 310
 
 (hereinafter referred to as
 
 Hieb II
 
 ). However, the plaintiff and St. Paul could not agree on the distribution of those proceeds, as St. Paul asserted that none of the Hartford money could be disbursed to the plaintiff until St. Paul's lien was set and paid in full.
 

 Id.
 

 Consequently, the plaintiff moved Judge Claude Sitton to determine the amount of St. Paul's lien pursuant to subsection 97-10.2(j).
 

 Id.
 

 According to the version of subsection 97-
 
 *372
 
 10.2(j) in effect at that time, a superior court judge's authority to determine the amount of a workers' compensation lien was triggered only by (1) a judgment that was insufficient to compensate the workers' compensation carrier's subrogation claim
 
 [1]
 
 or (2) a settlement.
 
 Id.
 
 at 37,
 
 464 S.E.2d at
 
 311 (citing
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) (1991) ) ("[I]n the event that a judgment is obtained which is
 
 insufficient to compensate the subrogation claim
 
 of the Workers' Compensation Insurance Carrier, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply....") (emphasis added). Exercising his discretion under subsection 97-10.2(j), Judge Sitton ordered that St. Paul was entitled to recover "$241,677.77 as full satisfaction of any workers['] compensation lien it may have on ... benefits paid or to be paid" to the plaintiff, and that the plaintiff receive the remainder of the Hartford UIM proceeds.
 

 Id.
 

 at 36-37
 
 ,
 
 464 S.E.2d at 310-11
 
 .
 

 St. Paul appealed and a divided panel of this Court reversed. After stating that one superior court judge generally may not overrule or modify the judgment of another superior court judge ("the superior court judge rule"), the
 
 Hieb II
 
 Court recognized that subsection 97-10.2(j) provided an exception to this rule.
 
 Id.
 
 at 37,
 
 464 S.E.2d at 311
 
 ("There are, however, some statutory exceptions to [the superior court judge] rule.
 
 See, e.g.
 
 , North Carolina General Statutes §§ 97-10.2 (1991) and 1A-1, Rule 60 (1990)."). However, the
 
 Hieb II
 
 Court ultimately held that subsection 97-10.2(j) had not been "call[ed] ... into play" and that Judge Sitton lacked the authority to modify the other superior court judges' orders because the " 'judgment' (in excess of $1.25 million) exceeded any amount necessary to reimburse" St. Paul at that time.
 
 [2]
 

 Id.
 
 at 38,
 
 464 S.E.2d at 311
 
 . The plaintiff appealed this Court's decision in
 
 Hieb II
 
 to the North Carolina Supreme Court.
 
 Hieb
 
 ,
 
 344 N.C. at 407
 
 ,
 
 474 S.E.2d at 325
 
 .
 

 On appeal to the North Carolina Supreme Court, the plaintiff argued,
 
 inter alia
 
 , that the superior court judge rule was not implicated because "the issue previously decided by Judges Gaines and Johnston was whether a workers' compensation carrier could
 
 assert
 
 a lien, pursuant to N.C.G.S. § 97-10.2, against the proceeds of UIM insurance purchased by someone other than the insured party's employer, while the issue before Judge Sitton was the
 
 amount
 
 of such workers' compensation lien that should be allowed."
 
 Hieb
 
 ,
 
 344 N.C. at 408
 
 ,
 
 474 S.E.2d at 326
 
 . After noting that "Judge Gaines' conclusions of law explicitly state in accordance with Judge Johnston's order that 'St. Paul Fire and Marine Insurance Company is entitled to a lien against the proceeds of the Hartford underinsured motorist policy
 
 for all amounts paid, or to be paid, to
 
 [the p]laintiff ... as worker[s'] compensation benefits[,]' " our Supreme Court rejected the plaintiff's argument and held that the superior court judge rule applied:
 

 [I]t is clear that the amount of the lien is to be the total of all amounts
 
 paid or to be paid
 
 to plaintiff as workers' compensation benefits. Additionally, the Court of Appeals issued a unanimous opinion [ (in
 
 Hieb I
 
 ) ] affirming that portion of Judge Johnston's order relating to the workers' compensation lien of St. Paul.... Thus, the issue of amount was dealt with and decided three times prior to plaintiffs presenting the matter to Judge Sitton. Judge Sitton's order, setting a lesser amount of the lien to be repaid, does not address a different issue than that previously decided by Judges Johnston and Gaines.
 

 Id.
 

 Even so, the Supreme Court went on to consider the plaintiff's argument that subsection 97-10.2(j) gave Judge Sitton the authority to determine the amount of St. Paul's lien.
 

 *373
 

 Id.
 

 The Court, however, rejected this contention based upon the rationale stated in
 
 Hieb II
 
 :
 

 Th[e] judgment [obtained by the plaintiff] is greater than the amount of St. Paul's lien at the time of Judge Sitton's order and therefore is not "insufficient to compensate the subrogation claim." On this record, we hold that the Court of Appeals did not err in concluding that Judge Sitton did not have authority under the provisions of N.C.G.S. § 97-10.2(j) to modify the previous judgments.
 

 Hieb
 
 ,
 
 344 N.C. at 410
 
 ,
 
 474 S.E.2d at 327
 
 .
 

 Our review of the decisions in
 
 Hieb
 
 reveals that the superior court judge rule does not apply in the present case. As noted above, the
 
 Hieb II
 
 Court recognized that subsection 97-10.2(j) provides a specific statutory exception to this rule.
 
 121 N.C.App. at 37
 
 ,
 
 464 S.E.2d at 311
 
 . Likewise, the clear implication of the Supreme Court's analysis in
 
 Hieb
 
 is that subsection 97-10.2(j) would have provided an exception to the superior court judge rule had the plaintiff's judgment been insufficient to compensate St. Paul's subrogation claim, thereby triggering Judge Sitton's authority to determine, in his discretion, the amount of the workers' compensation lien.
 
 See
 

 Hieb
 
 ,
 
 344 N.C. at 409-10
 
 ,
 
 474 S.E.2d at 326-27
 
 (addressing whether Judge Sitton's authority under subsection 97-10.2(j) had been triggered);
 
 see also
 

 Johnson v. S. Indus. Constructors, Inc.
 
 ,
 
 347 N.C. 530
 
 , 534, 538,
 
 495 S.E.2d 356
 
 , 358-59, 361 (1998) (citing the Supreme Court's decision in
 
 Hieb
 
 and holding that "since the judgment for plaintiff against the third-party tort-feasor in this case, in the amount of $219,052.20,
 
 is
 
 greater than the amount of the lien
 
 at the time of
 
 the trial court's order and is thus not 'insufficient to compensate the subrogation claim,' the trial court did not have jurisdiction to determine the amount of the lien pursuant to N.C.G.S. § 97-10.2(j)").
 

 Against this backdrop, we also conclude that subsection 97-10.2(j) provides a statutory exception to the doctrine of res judicata. Under subsection 97-10.2(j)'s plain language, the lien amount is to be determined at a later, separate proceeding, one that occurs
 
 after
 
 an employee has "obtained" a judgment against (or settled with) the third party, and after one of the parties has elected to "apply" for such a determination.
 
 See
 

 N.C. Gen. Stat. § 97-10.2
 
 (j). Use of the words "obtained" (past tense and past participle of the verb "obtain") and "apply" (present tense) in the statute indicates that the legislature intended subsection 97-10.2(j) to operate as follows: Once an employee has obtained a judgment against a third party, either party may apply to the appropriate superior court judge to determine the subrogation amount. At that point, a determination may be made, in the judge's discretion, after the employer and insurance carrier have been given notice and after all interested parties have been given the opportunity to be heard on the matter.
 
 See
 
 id.
 

 Case law from this Court supports this interpretation.
 
 See, e.g.
 
 ,
 
 Dion v. Batten
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 844
 
 , 850 (2016) ("In the present case, a judgment was obtained by Plaintiff against Defendant, and [Defendant's UIM carrier] applied ... for a determination of the subrogation amount. Under the plain language of [subsection 97-10.2(j) ], the authority of the trial court was triggered, allowing it to exercise discretion in determining the subrogation amount.");
 
 Wood
 
 ,
 
 160 N.C.App. at 700
 
 ,
 
 586 S.E.2d at 804
 
 (considering whether the superior court abused its discretion in reducing the defendants' workers' compensation lien after the plaintiff obtained a default judgment against a third-party tortfeasor and applied for determination of the lien amount). Because the statute specifically contemplates that a judgment will be issued in an action between the employee and a third party before "either party" may "apply" to determine the subrogation amount,
 
 see
 

 N.C. Gen. Stat. § 97-10.2
 
 (j), it would be nonsensical to hold that the prior judgment bars further litigation of the lien issue.
 
 See
 

 Helms v. Powell
 
 ,
 
 32 N.C.App. 266
 
 , 269,
 
 231 S.E.2d 912
 
 , 914 (1977) ("Under the normal rules of statutory construction, the language of a statute will be interpreted to avoid absurd or illogical consequences.") (citation omitted).
 

 It is also significant that subsection "97-10.2(j) grants
 
 limited jurisdiction
 
 to the superior court to determine the amount of the
 
 *374
 
 employer's lien[.]"
 
 Leggett v. AAA Cooper Transp., Inc.
 
 ,
 
 198 N.C.App. 96
 
 , 99,
 
 678 S.E.2d 757
 
 , 760 (2009) (emphasis added). The statute "provides a 'procedural remedy' and not a substantive claim."
 
 Anglin v. Dunbar Armored, Inc.
 
 ,
 
 226 N.C.App. 203
 
 , 207,
 
 742 S.E.2d 205
 
 , 208 (2013). As such, the second element of res judicata, "an identity of the cause of action in both the earlier and the later suit," cannot be proven in the present case.
 
 Erler
 
 ,
 
 141 N.C.App. at 316
 
 ,
 
 540 S.E.2d at 68
 
 . Murray's negligence action against Moody involved a civil claim for money damages, a full trial in which factual issues were resolved by a jury, and a judgment entered upon the jury's verdict. In contrast, Moody's motion to determine the amount of the workers' compensation lien is purely statutory and narrow in scope. Once the superior court's limited jurisdiction under subsection 97-10.2(j) is properly invoked, the court simply performs a judicial act in which it "must ... consider the factors that are expressly listed in the statute[,]"
 
 Estate of Bullock
 
 ,
 
 188 N.C.App. at 526
 
 ,
 
 655 S.E.2d at 874
 
 , and make "a judicial value judgment, which is factually supported ... [by] findings of fact and conclusions of law [.]"
 
 In Re Biddix
 
 ,
 
 138 N.C.App. at 504
 
 ,
 
 530 S.E.2d at 72
 
 .
 

 This Court has held that "orders entered in a [statutory] proceeding ... in which an executor must show cause why he should not be removed, do not constitute res judicata as to a later civil action for damages between the parties or collaterally estop the bringing of such an action."
 
 Shelton v. Fairley
 
 ,
 
 72 N.C.App. 1
 
 , 5,
 
 323 S.E.2d 410
 
 , 414 (1984). In support of its holding, the
 
 Shelton
 
 Court observed that " '[t]he res judicata doctrine precluding relitigation of the same cause of action has been held inapplicable where the performance of an act was sought in one action and a money judgment in the other.' "
 
 Id.
 
 at 8,
 
 323 S.E.2d at 414
 
 (citation omitted). There is no reason why this general principle should not apply in reverse here, as there is a substantial distinction between Murray's civil negligence action for damages and Moody's later motion to determine the amount of the workers' compensation lien. The amended judgment, therefore, cannot be res judicata as to the final amount of the workers' compensation lien. Rather, that determination must be made by the superior court upon consideration of the mandatory statutory factors contained in subsection 97-10.2(j).
 

 To sum up, Murray (the employee) obtained a judgment against Moody (the third-party defendant) in the negligence action. Moody later applied-as he was entitled-for a determination of the amount of the workers' compensation lien. Unnamed defendants were then given notice and an opportunity to be heard on the matter. Under subsection 97-10.2(j)'s plain language, the superior court's authority was triggered by Moody's motion. Judge Young should have exercised his discretion and determined the subrogation amount, as Judge Hobgood's amended order in the negligence action was not res judicata to Moody's present action. Accordingly, Judge Young erred in concluding that he did not have jurisdiction to consider Moody's motion for the determination of unnamed defendants' lien pursuant to subsection 97-10.2(j).
 

 For the reasons stated above, we reverse Judge Young's order denying Moody's motion and remand to the trial court for proper determination of the amount of the workers' compensation lien on Murray's recovery from Moody in the negligence action. On remand, the superior court should receive evidence "as to matters which must be considered" under subsection 97-10.2(j) and enter an order with findings that reflect full consideration of the mandatory factors.
 
 Hill v. Hill
 
 ,
 
 229 N.C.App. 511
 
 , 530,
 
 748 S.E.2d 352
 
 , 365 (2013) (addressing remand in equitable distribution when trial court failed to make statutorily-required findings of fact);
 
 see
 

 Alston v. Fed. Exp. Corp.
 
 ,
 
 200 N.C.App. 420
 
 , 425,
 
 684 S.E.2d 705
 
 , 708 (2009) (reversing and remanding for additional findings when "no findings of fact in the trial court's order [addressed certain] mandatory statutory factors" contained in subsection 97-10.2(j)).
 

 Finally, we note that this case is unique in the context of subsection 97-10.2(j) because unnamed defendants have not simply asserted a lien on Murray's recovery; instead, the subrogation amount they seek to recover is memorialized in a judgment granted in favor of Murray
 
 and
 
 Evans. If the trial court decides to reduce the lien amount, it may be
 
 *375
 
 necessary for Moody to file an appropriate motion to set aside the amended judgment.
 

 III. Conclusion
 

 We reverse the trial court's order and remand for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and INMAN concur.
 

 [1]
 

 Subsection 97-10.2(j) was amended in June 1999. N.C. S.L. 1999-194, s.2. The amendment eliminated the requirement that a third-party judgment be insufficient to compensate the workers' compensation carrier before the superior court could exercise its discretion and determine the subrogation amount. As noted above, a third-party judgment for any amount of damages will now trigger the superior court's authority to determine the amount of a workers' compensation lien.
 
 See
 

 N.C. Gen. Stat. § 97-10.2
 
 (j) (2015).
 

 [2]
 

 When
 
 Hieb II
 
 was decided, "St. Paul had paid [the plaintiff] approximately $266,400.00 in workers' compensation benefits."
 
 121 N.C.App. at 38
 
 ,
 
 464 S.E.2d at 311
 
 .